GEORGE J. FLINT v. FRANK A. LUHRS.[1]

October 16, 1896.

Nos. 10,073—(8).

**Stable Keeper's Lien—Exemption—Constitution.**

Where a horse which is exempt from sale on execution is delivered by the owner to the keeper of a livery or boarding stable, with a request to feed and care for him, the horse becomes thereby subject to a lien to secure such feed and keeping, as provided by G. S. 1894, § 6249. Such statute is not unconstitutional as to exempt property.

Appeal by plaintiff from a judgment of the municipal court of St. Paul, in favor of defendant, entered in pursuance of the findings and order of Twohy, J. Affirmed.

*E. M. Card*, for appellant.

*Butts & Jaques*, for respondent.

START, C. J. This is an action for the recovery of the possession of a horse. The plaintiff alleged that he owned the horse, that he was exempt, and that the defendant unlawfully detained him. The defendant claimed a lien on the horse for keeping him.

The here material facts, as found by the trial court, are as follows: The plaintiff, on November 1, 1894, delivered the horse to the defendant, who was the keeper of a boarding stable for horses, to be kept, supported, and cared for, and requested him so to do. The defendant, pursuant to such delivery and request, supported, kept, and cared for the horse from November 1, 1894, to June 21, 1895, when he was taken from the defendant's possession by virtue of the writ in this action, at which time there was due to the defendant for his keeping, at the monthly charge agreed upon by the parties, the sum of $86.50, which was the reasonable value of such keeping, and no part of which has ever been paid. The defendant necessarily incurred the further reasonable sum of $9.70 for publishing the notice of sale and other expenses in proceedings taken to enforce his lien on the horse. Such proceedings were not completed, for the reason that

[1] Reported in 68 N. W. 514.

after the sale of the horse had been advertised, and the sale cried, the writ herein was served before the sale was in fact made.

As a conclusion of law the court found that the defendant had a lien on the horse for the keeping, and for his expenses in the sum of $96.20, and was entitled to the possession thereof until such sum was paid, and directed judgment against the plaintiff for a return of the horse, or for his value, $100, in case a return could not be had. Judgment was so entered, from which the plaintiff appealed.

1. The plaintiff makes the point that, in any event, the judgment should have been for the return of the horse, or, in case a return could not be had, for the amount of the defendant's lien on the horse; not for his full value. This is correct. The rule in replevin by the general owner of chattels against one claiming a lien on or a special property therein is that, in case of a recovery by the party claiming such lien or special property, the judgment should be for the return of the property, or for the value of his special interest in case it is less than the actual value of the property. Dodge v. Chandler, 13 Minn. 105 (114); La Crosse & M. S. P. Co. v. Robertson, 13 Minn. 269 (291). Therefore the judgment in this case is technically erroneous, but we are not justified in reversing it for this error. The evidence as to the amount of the defendant's lien and his expenses in proceedings to enforce it is not before us, hence we must accept the findings of the court as to the amount. It was $96.20, exclusive of interest and costs in the action, and only $3.80 less than the actual value of the property. The case is a proper one, both legally and ethically, for the application of the maxim "de minimis."

2. The evidence as to the plaintiff's ownership of the horse, and whether he was exempt, is a part of the record, and it justifies a finding that the plaintiff was the general owner of the horse, and that he was exempt; but the trial court declined to so find, although requested by the plaintiff, except that it did find argumentatively that the plaintiff was the general owner of the property, subject to the defendant's lien. We therefore assume, for the purposes of this appeal, that the plaintiff was the general owner of the horse, and that he was exempt from seizure and sale on execution.

This brings us to the only question in the case entitled to serious consideration. The defendant bases his right to a lien on the horse upon the provisions of G. S. 1894, § 6249, which provides that any

keeper of a livery or boarding stable for horses or stock, who, at the request of the owner thereof, shall keep, support, or care for any such stock, shall have a lien thereon for his reasonable charges therefor, and until they are paid may retain the possession of such stock, and sell the same to pay the lien. This statute, by its terms, applies to any and all stock so kept, whether exempt or unexempt from sale on execution. The contention of the plaintiff is that this statute, in so far as it attempts to give a lien on exempt property, impinges section 12, art. 1, of our constitution, which, so far as here material, reads thus: "A reasonable amount of property shall be exempt from seizure and sale, for the payment of any debt or liability; the amount of such exemption shall be determined by law." His claim is that the words "any debt or liability" include any and all liabilities upon which a judgment might or could be obtained, and especially the liability on which the defendant predicates his lien in this action.

If, as claimed by the plaintiff, the constitution prohibits the legislature from providing by statute, under any and all circumstances, for a lien on property exempt from seizure and sale on execution, it certainly repeals the common law giving a lien on personal property under special circumstances in all cases where such property is exempt from sale on execution. In this respect there can be no distinction between statutory and common-law liens. It follows, then, that if the plaintiff's contention is correct, an innkeeper has no lien on, and may not detain, the personal baggage of his guest until his reasonable charge for keeping the guest is paid, if perchance such property is exempt by law; and that the blacksmith who shoes a horse, or the wheelwright who repairs a wagon, may not detain the horse or wagon until his reasonable charges for his services are paid, if such property is in fact exempt from sale on execution. It is unnecessary to multiply illustrations, for it is obvious that, if the plaintiff's contention is to be conceded, it will result in a radical change in business methods and an overturning of the law of liens as uniformly accepted and acted upon by lawyers and laymen, both before and since the adoption of our constitution.

The constitutional provision here in question prohibits the seizure and sale of exempt property on general execution for the payment of any debt or liability, also the creation solely by statute of any involuntary lien on such property, and its seizure and sale to pay

the lien. But it was not intended to, and does not, prohibit the owner of exempt property from voluntarily giving a lien upon any of his exempt property he may see fit, although he may not, it would seem, waive, in advance, the benefit of any exemption law. When he voluntarily gives or creates a lien on his property, the lien may be enforced in such method as the law may provide.

Now, the statute under consideration does not attempt to create an involuntary lien on any property. It simply provides that, if the owner of any horse or stock shall voluntarily deliver it to a livery or boarding stable keeper with the request that such keeper feed, care for, and keep it alive, and the keeper accepts the delivery, and complies with the request, he shall have a lien for his reasonable charges for such keeping. It is the owner of the property that creates the lien by his voluntary act. In the case at bar the plaintiff might have given the defendant a mortgage on his exempt horse to secure in advance the defendant's charges for his keeping, but when he delivered the horse to the defendant, with a request to keep and care for him, he gave the defendant a lien on the horse to secure him in the premises just as effectually as if he had given a mortgage to him for the same purpose. The law implied this from the voluntary act of the plaintiff in making such delivery and request.

Our conclusion is that, where a horse, although he is exempt from sale on execution, is delivered by the owner to the keeper of a livery or boarding stable, with a request to feed and care for such horse, he becomes thereby subject to a lien to secure such feed and keeping, as provided by G. S. 1894, § 6249, and that such statute is not unconstitutional as to exempt property.

Judgment affirmed.