# ILA HALSEY v. JOE SVITAK AND ANOTHER.[1]

## May 15, 1925.

## No. 24,544.

**Lien act in favor of boarding house keepers not unconstitutional.**
Neither section 12, article 1, nor section 34, article 4, of the state Constitution, is contravened by section 4, chapter 511, L. 1919, giving keepers of boarding and lodging houses a lien upon the baggage and other personal effects of boarders and lodgers.

1. See Innkeepers, 32 C. J. p. 569, § 84 (1926 Anno); Statutes, 36 Cyc. p. 992.

---

1. See note in 21 L. R. A. 229; 14 R. C. L. p. 539 et seq. 3 R. C. L. Supp. p. 246; 4 R. C. L. Supp. 910; note in 19 A. L. R. 539.

Upon the relation of Ila Halsey the supreme court granted its writ of certiorari directed to the municipal court of Minneapolis and Nordbye, J., commanding him to return the records in the above entitled proceeding to review its order of November 19, 1924. Affirmed.

*M. U. S. Khorlaug* and *F. S. Winston*, for relator.
*C. E. Warner*, for respondents.

LEES, C.
The validity of section 4, chapter 511, p. 686, L. 1919, giving keepers of boarding and lodging houses a lien upon the baggage and other personal effects of boarders and lodgers is assailed in this action. The action was begun in the conciliation court of the city of Minneapolis, was carried to the municipal court by appeal, and is brought here by writ of certiorari, no appeal being allowed by chapter 263, p. 520, L. 1917, in cases which originate in the conciliation court.

The question presented is whether the statute contravenes section 12, article 1, of the state Constitution.

[1]Reported in 203 N. W. 968.

In obedience to the Constitution, the legislature enacted the exemption statute, now contained in section 9447, G. S. 1923, which provides that certain property shall not be liable to attachment or sale on any final process issued from any court. Wearing apparel is included in the list of exempt property. In the case at bar some of the relator's clothing is held by the keeper of a lodging house as security for the payment of room rent which relator owes.

In Coleman v. Ballandi, 22 Minn. 144, it was held that the legislature could not give a materialman a lien upon a homestead. It was said that under the Constitution, which had not then been amended, to permit the enforcement of a mechanic's lien upon a homestead, the legislature might determine the amount of a debtor's exemptions and increase or diminish the amount from time to time, but beyond this it could not go. It was also held that discrimination in the exemption laws between different classes of creditors and different kinds of debts was not permissible, and this doctrine was restated with approval in Bofferding v. Mengelkoch, 129 Minn. 184, 152 N. W. 135.

Shortly after Coleman v. Ballandi, supra, was decided, the court sustained the provision in the exemption statute which gives the holder of a claim for the purchase price of exempt property the right to attach or levy upon the property. Rogers v. Brackett, 34 Minn. 279, 25 N. W. 601. Still later, in Flint v. Luhrs, 66 Minn. 57, 68 N. W. 514, 61 Am. St. 391, the court sustained a statute providing for a lien upon horses kept at livery or boarding stable. It may be gathered from the later decisions cited that the court was not disposed to apply strictly the rule adopted in Coleman v. Ballandi.

The common law has always recognized an innkeeper's right to a lien upon the baggage of his guests. It seems that the right grew out of the obligation to receive all who come to an inn, for the proprietor is bound to serve the public to the utmost extent of his ability and an action for damages will lie if he refuses without adequate reason. It was taken for granted that such a lien exists and may be enforced in this state when Singer Mnfg. Co. v. Miller, 52

Minn. 516, 55 N. W. 56, 21 L. R. A. 229, 38 Am. St. 568, was decided. Formerly the field of operation of particular liens such as that of an innkeeper was a narrow one, but the field has been broadened from time to time until such liens are no longer confined to those who are obliged to serve the public. Anyone who receives property in the way of his trade or occupation, to bestow labor or expense upon it, has a lien for his better security and may hold the property until the proper charges are paid and, if they are not paid, may sell it to satisfy the lien. Thus we have statutes providing for liens for storage, for transportation, for pasturage, for horseshoeing, for repairing motor vehicles, for threshing grain and for other services furnished to the owner of personal property. See chapter 69, G. S. 1923. It has long been assumed that these statutes are valid, although they make no provision for the exclusion from the lien of property exempt from seizure and sale to satisfy the debts of the owner.

In Nelson v. Johnson, 104 Minn. 440, 116 N. W. 828, 17 L. R. A. (N. S.) 1259, the court drew a distinction between lodging houses and hotels, saying that the proprietor of a private lodging house is not bound to receive all who apply, but may select his guests and contract specially with each, while a hotel keeper must receive all who come in a situation in which they are fit to be received. This seems to be the doctrine in other jurisdictions. 32 C. J. p. 529; 14 R. C. L. p. 493. So it may safely be said that at common law the keeper of a lodging or boarding house had no lien upon the personal effects of a lodger or boarder. Undoubtedly the legislature knew all this and yet concluded that the innkeeper's lien rights might properly be extended to the proprietors of lodging and boarding houses. In enlarging the class who may take advantage of the lien formerly given to innkeepers only, the legislature did not arbitrarily include those whose situation has nothing in common with that of innkeepers, for the proprietor of a lodging house deals with a class of people who are quite as ready to evade payment of room rent as are those who patronize hotels.

The mechanic's lien law condemned in Coleman v. Ballandi was condemned because the discrimination in the exemption laws between different classes of creditors and kinds of debts was thought to

be class legislation. When the case was decided, the courts were strict in their application of the constitutional prohibition of class legislation. In recent years there has been a marked drift in the opposite direction in both Federal and state courts. The legislature is now permitted to create classes to which the operation of so-called general laws is confined without much risk of having the statute held to be unconstitutional as special or class legislation. The drift away from the ancient landmarks has been deplored in some quarters, but it has been inevitable. To deal with conditions which justify legislative action by enacting laws embracing all classes of persons and all lines of business has become increasingly difficult, In applying the constitutional prohibition of class legislation to the enactments of the legislature, the courts have found the prohibition sufficiently elastic to permit statutes to stand upon a more slender foundation than there is here.

We hold that to group the keepers of hotels, boarding houses and lodging house in one class, and to subject all personal property which comes into their possession to a lien to secure the payment of claims against the owner for board and lodging, is not an unwarranted discrimination in favor of a single class of creditors to the exclusion of all others, and that neither section 12, article 1, nor section 34, article 4, of the state Constitution, is contravened by the act in question.

Affirmed.