RUSSELL M. McPHERSON AND ANOTHER v.
UNIVERSITY MOTORS, INC., AND OTHERS.

193 N. W. 2d 616.

January 7, 1972—No. 43026.

*Reed C. Richards* and *Dolores C. Orey,* for appellants.

*James H. Levy* and *William I. Kampf,* for respondent University Motors, Inc.

*Thomas W. Murray,* for respondent Fidelity Transfer and Storage Company.

148

Heard before Knutson, C. J., and Otis, Kelly, and Hachey, JJ.

KELLY, JUSTICE.

Plaintiffs, Mr. and Mrs. Russell McPherson, appeal from summary judgments in favor of defendants University Motors, Inc., and Fidelity Transfer & Storage Company. The sole issue is whether the lien authorized by Minn. St. 566.17 is limited by Minn. Const. art. 1, § 12, and the exemption statute, Minn. St. 550.37, to nonexempt property. We affirm the lower court's holding that the lien was not limited.

We are called upon to review a summary judgment and accordingly the facts are not in dispute. Plaintiffs and University Motors were parties to a contract for deed agreed upon October 19, 1967, for a residence in St. Paul. Plaintiffs occupied the property. On June 29, 1970, after the 30-day notice required by § 559.21, University Motors canceled the contract because of plaintiffs' failure to make their payments. University Motors prevailed in an unlawful detainer action on July 15, 1970.[1] A writ of restitution, issued pursuant to the unlawful detainer action and dated August 3, 1970, was attached to plaintiffs' door on August 8, 1970, and read by the plaintiffs on the next day.[2]

When a constable arrived with defendant Fidelity Transfer & Storage Company on August 11, 1970, plaintiffs were still in possession and had not yet removed their belongings. Pursuant to § 566.17, plaintiffs' personal property was boxed, moved, and stored by Fidelity.

Section 566.17 authorizes the rightful owner of unlawfully detained realty to move and store any personal property belonging to the party which refused to vacate the premises. The expense of moving is borne by the landlord or vendor, who then has a lien upon the personal property moved for the expenses of moving and storing. The individual evicted may retrieve his property after

---

[1] See, Minn. St. 1969, §§ 566.02 to 566.09.

[2] See, Minn. St. 566.11 to 566.17.

satisfying the lien. If the property is not claimed in 60 days, the landlord or vendor may sell the items to recoup his expenses.

The plaintiffs demanded their personal property but refused to pay the moving and storage expenses. Plaintiffs then brought this action, claiming that they were entitled to their property and did not have to satisfy the lien because their property was exempt under this state's constitution and our exemption statute. The lower court held that the exemption did not apply to goods detained pursuant to the lien.

Minn. Const. art. 1, § 12, contains the following provision:

"* * * A reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law."

This provision makes it the duty of the legislature to provide by law a reasonable exemption.[3] There was an exemption statute under the territorial laws[4] and an exemption statute was enacted by the first session of the state legislature[5] to carry out the constitutional mandate. Whether or not property taken pursuant to the lien here considered is subject to the exemption is a legislative decision. Nothing in the constitutional mandate requires limiting the lien to nonexempt property where it is the legislature's decision to not exempt property subject to the lien. This court has upheld the constitutionality of other lien statutes in cases involving property otherwise exempt under the then existing exemption statutes in Flint v. Luhrs, 66 Minn. 57, 68 N. W. 514 (1896), and in Halsey v. Svitak, 163 Minn. 253, 203 N. W. 968 (1925).

The question of whether the exemption statute[6] applies to the lien depends entirely on legislative intent. Both parties advance policy considerations to support their arguments. Plaintiffs contend that the lien has the effect of depriving a tenant or vendee

---

[3] Kelly v. Baker, 10 Minn. 124 (154) (1865).

[4] Rev. Stat. (Terr.) 1851, c. 71, § 100.

[5] L. 1858, c. 35, § 8.

[6] Minn. St. 550.37.

of all his personal property since the expense of moving and storage is too great for one in financial straits to afford. Defendants argue that the lien protects the evicted person's property and prevents needless breaches of the peace. Defendants believe that fairness requires a procedure whereby a landlord or vendor may recover the expenses incurred in removing a tenant or vendee in unlawful possession of realty. An analysis of the history of the exemption statute and various statutory liens indicates that the policy decision has already been made in favor of defendants' argument.

Since the early legislators were cognizant of the exemption of certain property from attachment and sale on final process, it is especially important to consider their attitude towards liens.

Minnesota law presently provides for several liens which are created without the actual consent of the owner of the personal property and which have a long history in this state. Among these are a lien for the state livestock sanitary board for quarantining animals in Minn. St. 35.12,[7] an innkeeper's lien on a guest's baggage in §§ 327.05 and 327.06,[8] a storage lien on unclaimed property in § 345.10,[9] a lien for those who care for exposed animals in § 346.27,[10] a poundmaster's lien in § 367.24,[11] and the lien which is the subject of this litigation in § 566.17.[12] As early as 1858, the legislature had enacted an estray lien.[13] It is obvious that the newly passed exemption statute had no effect on the estray lien. If the exemption statute had applied to the estray lien, the estray lien would have been partially ineffectual since some livestock was exempt.[14]

---

[7] L. 1903, c. 352, § 17.

[8] Earlier provisions are found in L. 1874, c. 52.

[9] L. 1885, c. 202, § 2.

[10] L. 1903, c. 297.

[11] L. 1860, c. 14, art. 12, § 3.

[12] L. 1909, c. 496, § 5.

[13] L. 1858, c. 62.

[14] See, L. 1858, c. 35, § 8.

All of these liens may involve property named in the exemption statute. If property subject to the lien statute in this case is exempt because of the exemption statute, then all the liens named above are similarly limited. One part of the question of this appeal is whether the legislature intended this limitation on such liens.

In the early case of Flint v. Luhrs, 66 Minn. 57, 60, 68 N. W. 514, 515, this court held:

"[Minn. Const. art. 1, § 12] was not intended to, and does not, prohibit the owner of exempt property from voluntarily giving a lien upon any of his exempt property he may see fit, although he may not, it would seem, waive, in advance, the benefit of any exemption law. When he voluntarily gives or creates a lien on his property, the lien may be enforced in such method as the law may provide."

Plaintiffs argue that Flint may be distinguished because there the debtor voluntarily subjected his property to the lien. While the degree of voluntariness in Flint may be greater than in the case at bar, we believe that no legal distinction exists between the liens.

In 1909, the legislature enacted the lien found in § 566.17.[15] This lien is one of a series of liens created by the legislature which are exceptions to the exemption act. This court, in Halsey v. Svitak, *supra*, ruled that the innkeeper's lien and its extension to keepers of lodging houses and boarding houses were not contrary to Minn. Const. art. 1, § 12. The element of voluntariness in that case is similar to the case at bar. Neither the lodger in Halsey nor plaintiffs in this action expressly agreed to subject their property to a lien. A person who becomes a hotel guest or lodger voluntarily agrees to all of the consequences that by law would flow from such a relationship to the owner. Similarly, plaintiffs by executing the contract for deed voluntarily agreed to all the consequences arising from their agreement including the laws applicable to the relationship between a vendor and vendee under a contract for deed. Halsey informs us that no distinction may be drawn between

---

[15] L. 1909, c. 496, § 5.

liens created by express consent and liens such as the innkeeper's lien where consent may be implied. We confirm the holding in Flint v. Luhrs, *supra,* that such liens are not subject to the exemption statute.[16]

Defendants raise a number of issues regarding the interpretation of the exemption statute. Because we rule that the exemption statute does not apply, we need not interpret it.

Affirmed.

---

[16] This conclusion may also be reached by following Minn. St. 645.26, which states that if two statutes are in conflict, the specific statute prevails over the general statute. The lien statute creates a specific lien which is an exception to the general exemption statute.