IN RE APPEAL OF KATHLEEN SHARPE O'ROURKE
FROM AN ORDER OF DAKOTA COUNTY
PROBATE COURT.
IN RE APPEAL OF THERESA M. O'ROURKE FROM
AN ORDER OF THE PROBATE COURT OF
DAKOTA COUNTY.
HARVEY STOLP v. MARIE SCRIMSHAW.

220 N. W. 2d 811.

May 24, 1974—Nos. 44565, 44575, 44622.

*Richard C. Smith,* for appellant Kathleen O'Rourke.

*Richard Baldwin, David W. Nord,* and *Joseph H. Rivard,* for appellant Theresa O'Rourke.

*Clifford F. Hansen,* for appellant Stolp.

*Grannis & Grannis* and *David L. Grannis, Jr.,* for Estate of Leo Francis O'Rourke.

*Hartke, Atkins & Montpetit* and *Joel A. Montpetit,* for respondents in No. 44565 and No. 44575.

*Kendall Ellingson,* for respondent Scrimshaw.

*Frundt & Frundt,* amicus curiae.

*Warren Spannaus,* Attorney General, *Jonathan H. Morgan,* Solicitor General, *Peter W. Sipkins,* Assistant Solicitor General, and *James B. Early,* Special Assistant Attorney General, for Warren Spannaus, Attorney General, amicus curiae.

*C. Paul Jones,* State Public Defender, and *Mark W. Peterson,* Assistant State Public Defender, for C. Paul Jones, State Public Defender, amicus curiae.

*Earle F. Tighe,* amicus curiae.

*Robert A. Nicklaus* and *Dwight J. Leatham,* amici curiae.

PETERSON, JUSTICE.

Applications have been duly made by appellants in these and other like cases for "leave to appeal" from decisions of district courts acting in an appellate capacity upon matters initiated and tried in county courts, all as provided by the County Court Act, L. 1971, c. 951, codified as Minn. St. c. 487.

160

The propriety of this court's discretionary act in granting or denying these applications for leave to appeal, as provided in § 487.39,[1] poses important constitutional issues concerning this court's appellate powers and the legislature's power to authorize judicial discretion in the exercise of these powers. Having raised

---

[1] Minn. St. 487.39 provides in part: "Subdivision 1. An aggrieved party may appeal to a district court judge from a determination of a county court. The provisions of this section govern all appeals from the county court; appeal provisions of all other statutes are inapplicable except as stated in subdivision 3.

(a)  Except as provided in clause (b), the appeal in a civil case shall be taken by filing written notice thereof with the clerk of court of the county in which the action was heard not more than 30 days after written notice of the court's determination has been served upon the aggrieved party or his attorney, or in any event within three months after the determination in a civil case.

\*    \*    \*    \*    \*

(c)  A written notice of appeal shall be served by the appellant upon all parties to the original proceedings or their attorneys not more than five days after filing a written notice of appeal and proof of such service shall be filed with the clerk of county court in the county in which the action was heard not more than three days after the service of such notice on the opposite party or his attorney. The appeal shall be heard and determined by a district court judge.

"Subd. 2.   The appeal shall be confined to the typewritten record. By stipulation of all parties, the record may be shortened. The district court judge shall, upon request, hear oral argument and receive written briefs. The district court judge may affirm, reverse or modify the judgment or order appealed from, or take any other action as the interests of justice may require. On appeal from an order, the district court judge may review any order affecting the order from which the appeal is taken and an appeal from a judgment may review any order involving the merits or affecting the judgment. The supreme court shall formulate rules of appellate procedure applicable to a district court judge hearing appeals from a county court. Until otherwise provided, the rules of appellate procedure applicable to appeals to the supreme court shall apply to a district court judge hearing appeals from a county court, except as provided in this section. *An appeal may be taken from the determination of a district court judge to the supreme court with leave of the supreme court.*" (Italics supplied.)

the issue sua sponte, as a precondition of acting upon these applications, we solicited the valued aid of counsel for the parties and amici curiae in response to the questions set forth in the margin.[2] The immediate issue concerns the validity of the County Court Act's two-tier appellate provisions, but, as these questions indicate, resolution of that issue necessitates a comprehensive consideration of this court's constitutionally-created appellate powers.

The Judiciary Article of the Minnesota Constitution, art. 6, establishes the judicial powers of this court, the district courts, and inferior, legislatively established courts. Section 1 provides:

"The judicial power of the state is hereby vested in a supreme court, a district court, and such other courts, judicial officers and commissioners with jurisdiction inferior to the district court as the legislature may establish."

The county court, a court with jurisdiction inferior to the district court, has been structured upon the probate court formerly es-

---

[2] (1)  Do the provisions of Minn. St. 487.39 permitting an appeal to the supreme court from a determination of a district court, only "with leave of the supreme court," conflict with the right of appeal accorded by Minn. Const. art. 6, § 2, which confers on the supreme court "appellate jurisdiction in all cases"? Specifically, does the Minnesota Constitution by *granting* jurisdiction to the supreme court in all cases mandate that the court *exercise* jurisdiction in all cases?

(2)  If the Minnesota Constitution is otherwise construed to permit appeals only "with leave of the supreme court," does the granting of review to some applicants and not others deny the latter equal protection of the laws?

(3)  If there is an absolute right to appeal every decision of the county court, does review by the district court satisfy that constitutional requirement?

(4)  If the Minnesota Constitution is construed to require the supreme court to accept jurisdiction in all cases, does the process of reviewing a trial court record to determine whether the supreme court will hear the case on the merits constitute a sufficient exercise of jurisdiction to satisfy the constitution if review on the merits is denied?

tablished by art. 6, § 1. "Jurisdiction" and "power" are words with substantial synonymity[3] and appear interchangeably in the quoted section. Section 2 of the Judiciary Article, particularly disclosing the powers of the supreme court, provides in part:

"*The supreme court* shall consist of one chief judge and not less than six nor more than eight associate judges as the legislature may establish. It *shall have* original jurisdiction in such remedial cases as may be prescribed by law, and *appellate jurisdiction in all cases,* but there shall be no trial by jury in said court." (Italics supplied.)

This court's appellate jurisdiction, unlike its original jurisdiction, is not qualified by the phrase "as may be prescribed by law."[4] The contrast is the more apparent in the reverse grant of jurisdiction to the district court stated in art. 6, § 5:

"*The district court shall have* original jurisdiction in all civil and criminal cases, and shall have such *appellate jurisdiction as may be prescribed by law.*" (Italics supplied.)

The legislative grant of appellate jurisdiction to the district court under the County Court Act is thus constitutionally authorized.

---

[3] Black, Law Dictionary (Rev. 4 ed.) p. 991, defines "jurisdiction" as "the authority by which courts and judicial officers take cognizance of and decide cases" and as "the authority, capacity, power or right to act." The same term was defined in Montour v. Purdy, 11 Minn. 278, 297 (384, 405) (1865), as "authority to hear and determine" and in Holmes v. Campbell, 12 Minn. 141, 146 (221, 227) (1867), as "the legal authority to administer justice."

[4] The United States Constitution, by art. III, § 2, provides that in all cases other than certain specified classes of litigation, "the supreme court shall have appellate jurisdiction, both as to law and fact, with such exceptions and under such regulations as the Congress shall make." Similarly, most state constitutions provide that appellate jurisdiction is that as may be prescribed by law. Only a few state constitutions are like Minnesota's in not containing such express power of legislative regulation or control. See, Legislative Drafting Research Fund, Columbia University, Constitutions of the United States, National and State.

■ The fundamental issue posed under the County Court Act is whether an appeal to this court from an inferior court constitutionally may be denied in any case, whether by act of the legislature or by rule of this court. Petitioners and those amici curiae who contend that Minn. St. 487.39 is invalid to the extent that it invests this court with discretion to grant or deny an appeal from the district court, assert, as expressed in one of their briefs, that "[a] court which has been granted jurisdiction of a particular type of legal controversy must exercise that jurisdiction when it is properly invoked." Or, as amplified in oral argument, that the State Constitution grants to an individual a right of appeal which this court is mandated to hear and determine.

We digress, preliminary to an exposition of our reasons for rejecting these contentions, to note that the County Court Act does not represent a direct encroachment of the legislature upon this court's appellate powers, for it does not undertake to deny this court's power to accept an appeal. Rather, it is seemingly a legislative recognition of this court's discretionary power not to accept an appeal without leave. Were it otherwise, a distinctly different and more serious constitutional issue of encroachment by one branch of government upon another, contrary to our constitutional separation of powers, would be raised.[5]

A corollary of this preliminary consideration is that this court, at least as a matter of comity, has recognized that the legislature may enact reasonable regulation of the conditions under which this court's jurisdiction shall be invoked. Legislation, now gen-

---

[5] Article 3, § 1, of the Minnesota Constitution divides the state government among the "three distinct departments—legislative, executive, and judicial—" and declares that none "shall exercise any of the powers properly belonging to either of the others * * *." Article 4 provides the powers and prerogatives of the Legislative Department; art. 5, those of the Executive Department; and art. 6, those of the Judiciary. As stated in Lading v. City of Duluth, 153 Minn. 464, 468, 190 N. W. 981, 982 (1922), "The jurisdiction of the supreme court of the state is conferred and limited by the state Constitution, section 2, article 6," which is the "supreme law on the subject and beyond encroachment by legislation."

erally superseded by this court's Rules of Civil Appellate Procedure, imposing time limitations for perfecting appeals to this court or limiting appeals "of right" to stated kinds of orders and judgments are illustrative of such familiar restrictions. Tierney v. Dodge, 9 Minn. 153, 156 (166, 170) (1864), declared that the constitutional term "appellate jurisdiction" is definable in terms of its *"nature"* but "does not embrace the mode in which the jurisdiction shall be exercised," a declaration often reiterated in subsequent cases. In Smith v. Illinois Central R. Co. 244 Minn. 52, 54, 55, 68 N. W. 2d 638, 639, 640 (1955), wherein an appeal from district court was dismissed on the ground that, under the provisions of Minn. St. 605.09, the orders from which it had been taken were nonappealable, we said more broadly:

"The right of appeal is governed by statute in this state. * * *

* * * * *

"* * * Furthermore, we find no merit in defendant's assertion that the provisions of § 605.09 are violative of Minn. Const. art. 3, § 1, and art. 6, § 2."

It should be noted that the issue had been submitted, without oral argument, on the motion papers and very brief memoranda of the parties. The best summation of the rule that appellate review "as of right" is "purely statutory" is contained in Ginsberg v. Williams, 270 Minn. 474, 476, 135 N. W. 2d 213, 215 (1965). We need not prolong this digression, for no one participating in these proceedings to argue that there is a constitutionally mandated right of appeal goes so far as to contest this preliminary point.

We hold that the Minnesota Constitution does not, either expressly or by necessary implication, guarantee to the individual a right of appeal to this court. Article 6, § 2, clearly makes no express grant of such personal right of appeal. It does declare in broad terms the structure, the rights and powers, and the duties and obligations of the supreme court. It does not declare, in any terms directed to the individual, that any person dissatis-

fied by the decision of an inferior court shall have an appeal to the supreme court. The Minnesota Constitution's Bill of Rights for the individual, which is art. 1, does expressly declare inviolate rights relating to judicial proceedings, among them the right to trial by jury (§ 4) ; the right against excessive bail and excessive punishment (§ 5) ; the right of an accused with respect to fair and speedy trial (§ 6) ; and the right against self-incrimination (§ 7). We hold that the declaration of these individual rights does not state a constitutional right to appellate review in this or any court; none of the parties contends otherwise.

The right of appeal in all cases is not one necessarily implied by art. 1 or art. 6. Article 6 (the Judiciary Article), read in conjunction with art. 3 (Separation of Powers among the executive, legislative, and judicial departments), is plainly a grant of independent power to the judiciary free from encroachment by the governor or the legislature, except only as there or elsewhere limited by the constitution. No implication is to be derived from art. 1, § 7, guaranteeing due process of law or even from the Magna Charta concepts embodied in the great words of art. 1, § 8:

"Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property or character; he ought to obtain justice freely and without purchase; completely and without denial; promptly and without delay, conformable to the laws."

Justice is not less freely obtained or less complete if claims are adjudicated solely in a trial court of competent jurisdiction or if, as under the County Court Act, there is an appeal to a district court but the right to review in this court is only discretionary and not mandatory.[6]

Mr. Justice Mitchell, in City of Minneapolis v. Wilkin, 30 Minn. 140, 144, 14 N. W. 581, 583 (1883), wrote:

---

[6] Considerations of due process and equal protection of the law arising from a discriminatory denial of the appellate process, a distinctly different matter, are separately considered later in this opinion.

"* * * Independently of any express constitutional guaranty, a person has no constitutional right to have his case reviewed on appeal."

State v. Zenzen, 178 Minn. 394, 227 N. W. 356 (1929), in which this court dismissed an appeal from a district court order denying a new trial in an adjudication and commitment of a teenage girl as a juvenile delinquent, implicitly reaffirmed this concept in the words of Mr. Chief Justice Wilson (178 Minn. 394, 227 N. W. 356):

"* * * Proceedings involving juvenile delinquents are had pursuant to G. S. 1923, c. 73A, as amended, 2 Mason, 1927, id. which fails to provide for an appeal. The legislature did not give that right. Unless such right is given expressly or by implication, it does not exist. It is not an inherent right. The right of appeal was unknown to the common law. * * * Certiorari may be available."

An opinion from another state relatively contemporaneous with Wilkin, People v. Richmond, 16 Colo. 274, 26 P. 929 (1891), makes much the same points under discussion here in the course of sustaining a statute creating an intermediate court of appeals. Holding that it did not violate that state's constitutional provision vesting the state's "judicial power" in "a supreme court, district courts, county courts, justices of the peace and such other courts as may be provided by law," the court said (16 Colo. 281, 26 P. 931):

"If, as relator contends, every suitor is entitled to be heard by the supreme court in every case, it follows of course that the judgment of no other court can be final; and therefore the act, in so far as in certain cases it confers final jurisdiction upon the court of appeals, is void. But the citizen has no natural or inalienable right to a hearing in the supreme court. If the right to such a hearing exists, it must be deduced from some constitutional guaranty. The constitution will, however, be searched in vain for any provision that expressly or by fair implication con-

tains this guaranty. The declarations in section 6 of the Bill of Rights, 'That courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and that right and justice shall be administered without sale, denial or delay,' simply bestow upon each individual the right to an intelligent, impartial and speedy judicial hearing and determination of his grievances. They were not intended to confer the privilege of having each controversy tried by every court of the state; nor was it the purpose of this provision to de-- clare, irrespective of legislative direction, that the litigant should be permitted to invoke the jurisdiction of any particular court or number of courts. Such a construction of the language employed would often in practice be injurious to the suitor himself, as well as detrimental to the public welfare. The provision is, as already observed, satisfied when the suitor has an opportunity to secure a speedy and impartial judicial settlement of his controversy; and this is especially true, when, as under the present act, such settlement includes a hearing in both an original and an appellate tribunal."

Any implication of a right of review upon demand would serve neither the general public interest nor, indeed, the long-range interests of individual litigants. Sound judicial administration dictates that the escalating demands upon the limited resources of appellate courts be maintained within manageable limits. Justice is needlessly delayed, if not diminished or in a real sense denied, by the diversion of appellate attention from the significant to the relatively insignificant appeal.[7] The United States

---

[7] We do not intimate that most, or even many, appeals are insignificant; and few are patently frivolous. We do state that those cases in which the appellate affirmance is readily predictable to the thoughtful lawyer are of minimal significance in an appellate context. One example is a case which primarily involves an issue of fact decided by the trial court or jury upon a full record of competent evidence. Another example is the case which involves an issue of law decided upon well-settled principles of law, there having been no indication from this court or other courts or commentators that such principles warrant reconsideration.

Supreme Court has long recognized the inherent necessity of managing its caseload as a matter of sound judicial administration, a concept applicable to a state appellate court notwithstanding obvious difference in the sources of appellate authority or magnitude of the issues presented for review. It was well expressed by Mr. Justice Frankfurter, writing for the court on this point in Brown v. Allen, 344 U. S. 443, 488, 491, 73 S. Ct. 397, 437, 438, 97 L. ed. 469, 505, 507 (1953):

"From its inception certiorari jurisdiction has been treated for what it is in view of the function that it was devised to serve. It was designed to permit this Court to keep within manageable proportions, having due regard to the conditions indispensable for the wise adjudication of those cases which must be decided here, the business that is allowed to come before us. By successive measures Congress enlarged the discretionary jurisdiction of the Court until, by the Judiciary Act of 1925, supplemented by the Court's own invention of the jurisdictional statement in relation to the narrow scope of residual appeals, the Court became complete master of its docket. The governing consideration was authority in the Court to decline to review decisions which, right or wrong, do not present questions of sufficient gravity. Whatever the source of these questions, whether the common law, statutes or the Constitution, other cases of obvious gravity are more than enough to absorb the Court's time and thought. Cf. *Hamilton Shoe Co. v. Wolf Brothers,* 240 U. S. 251, 258.

"It is within the experience of every member of this Court that we do not have to, and frequently do not, reach the merits of a case to decide that it is not of sufficient importance to warrant review here. Thirty years ago the Court rather sharply reminded the Bar not to draw strength for lower court opinions from the fact that they were left unreviewed here."

The idea that an appeal to this supreme court is mandated in every case—that it is an individual right guaranteed by the Judiciary Article itself—rests almost completely on the unarticulated

assumption that it is so. The authority of this proposition is in no holding of this court, but in a number of dicta in which, without extended discussion, this court seemed to say so. Amicus curiae, the state public defender, acknowledges this posture in the words of its brief:

"During the hundred and some-odd years since the passage of the state constitution, Article 6, section 2 has never been directly construed as granting the right of appeal in every case (i.e., mandating that the supreme court exercise jurisdiction in every case in which an appeal is attempted), for the issue has never arisen. However, it seems apparent by the cases which have interpreted this constitutional provision that such is indeed the law."

A collation of the most-cited cases will demonstrate that the court was asserting its constitutionally independent *power* of review, subject to reasonable legislative regulation, as distinguished from admitting its constitutional *duty* to accept an appeal in any case.

Tierney v. Dodge, 9 Minn. 153 (166) (1864), the first of such cases, involved the validity of a St. Paul charter provision which incorporated a statutory provision permitting persons convicted before a justice of the peace of any offense to appeal from the sentence to the district court, but added that in cases of assault "no appeal shall be allowed where the judgment or fine imposed, exclusive of costs, is less than twenty-five dollars." One of several claims urged by the petitioner was that this legislative enactment conflicted with art. 6, § 2, because the provision deprived this court of jurisdiction. This court held, in effect, that the judicial writ of certiorari would lie in the district court. Although the court referred three times to the "right of appeal," these words were primarily employed in response to the claim that the limitation of appeal according to the amount of the fine or judgment constituted a denial of equal protection, a constitutional issue there rejected.

City of Minneapolis v. Wilkin, 30 Minn. 140, 14 N. W. 581

(1883), presented the constitutionality of a statute which assertedly denied the petitioning landowner "the right of appeal" to this court from the judgment of the district court confirming the condemnation award of court-appointed commissioners. This court said (30 Minn. 144, 14 N. W. 583):

"* * * Independently of any express constitutional guaranty, a person has no constitutional right to have his case reviewed on appeal. * * * To deny a party a right of appeal is not in conflict with section 2, article 6, of the constitution of the state; at least where, as in this case, the right of review on a writ of *certiorari* exists. Tierney v. Dodge, 9 Minn. 153, (166.)"[8]

County of Brown v. Winona & St. Peter Land Co. 38 Minn. 397, 37 N. W. 949 (1888), is the case most commonly cited for the proposition that the constitution created an individual right of appeal, mandating this court to hear and determine any and all appeals. Appellants submit that it is the controlling authority. The case involved proceedings to enforce payment of taxes on real estate, the statute then in force providing that the trial court could certify the case to this court "if, in its opinion, the point is of great public importance, or likely to arise frequently." The defendant railroad sought a writ of mandamus requiring the district judge to certify the proceedings to this court. That writ was denied, and defendant then sought, and this court granted, certiorari. The whole of the opinion incident to this grant is contained in this one paragraph (38 Minn. 399, 37 N. W. 950):

"The statute gives no appeal in proceedings to enforce taxes against real estate, and, in case the court below declines to certify its statement of facts and decision, as provided in the statute, there is no mode of bringing the record and proceedings to this court for its determination except by *certiorari*. The constitu-

---

[8] The arguably imprecise use of the word "right" is observable from a prior reference in the opinion to the district court's "right" to consider matters raised by affidavits in the nature of a case or bill of exceptions. Right, in that context, is surely referable to "power."

tion (section 2, art. 6) provides that this court shall have 'appellate jurisdiction in all cases, both in law and equity.' *This provision has been generally understood to mean that, in all judicial proceedings, the judgment which finally determines the rights of the parties is subject to review by this court, and we so hold.* The legislature may prescribe the mode by which a cause is to be brought to this court, either by appeal or otherwise, and either directly from the court first determining it, or after a rehearing before some other court; but it cannot deprive a party of the right to bring the cause in some manner to this court. *If no other mode is given by statute, this court may assert and exercise its appellate jurisdiction by means of the writ of certiorari.* We therefore decided, on the motion to quash, that in proceedings such as these, if the court below declines, on a proper application made to it, to certify the matter under the statute, the writ of *certiorari* may issue." (Italics supplied in part.)

Notwithstanding reference to the individual litigant's "right to bring the cause in some manner to this court," the more critical language, restated in the court's more precise syllabus, is that "the judgment which finally determines the rights of the parties in a judicial proceeding is subject to review by this court" [9] and that "if the statute gives no other mode for bringing the record here, the writ of *certiorari* may issue." 38 Minn. 397, 37 N. W. 949. The opinion on this point, quite peremptorily asserting this court's appellate jurisdiction, plainly represents no comprehen-

---

[9] This, and only this, was the authoritative language recited in State v. Leftwich, 41 Minn. 42, 43, 42 N. W. 598 (1889), in holding that a district court's judgment of criminal contempt against an attorney was reviewable by this court. It is the more significant because Mr. Chief Justice Gilfillan was the author of the opinion in both Brown and Leftwich. It may be noted, however, that Brown was more extensively quoted by a different justice in State ex rel. Board of County Commrs. v. Dunn, 86 Minn. 301, 308, 90 N. W. 772, 775 (1902), a case holding that the state auditor's determination of the proper county for taxation of personal property is reviewable by certiorari notwithstanding a statute providing the auditor's determination was "final."

sive consideration of the issue now squarely presented under the County Court Act.

Kroning v. St. Paul City Ry. Co. 96 Minn. 128, 104 N. W. 888 (1905), which involved the issue of this court's power to remand a case to the district court to enable the appellant to amend and renew its motion for a new trial on the ground of newly discovered evidence arising since the filing of an appeal in this court, although contextually different, is significant in its treatment of the Brown opinion (96 Minn. 129, 104 N. W. 888):

"* * * The radical character of the motion, however, is not the test of the question whether we have jurisdiction to grant it, although the unusual character of the relief sought is a cogent reason why the power, if it exists, should be exercised with caution. The appellate jurisdiction of this court is not derived from the legislature, but from the constitution (article 6, § 2) * * *.

"*This general grant of power carries with it by necessary intendment every other power reasonably necessary for the complete exercise in all cases of the jurisdiction conferred.* County of Brown v. Winona & St. Peter Land Co., 38 Minn. 397, 37 N. W. 949; State v. Leftwich, 41 Minn. 42, 42 N. W. 598. It was by virtue of this implied power that the cases were remanded in the decisions we have cited. *We therefore hold* that we have jurisdiction to grant the relief prayed for by the motion, if the appellant has shown itself entitled to it." (Italics supplied.)

Flour City Fuel & Transfer Co. v. Young, 150 Minn. 452, 185 N. W. 934 (1921); State ex rel. City of Minneapolis v. Boucher, 171 Minn. 297, 214 N. W. 30 (1927); and Ridgway v. Vaughan, 187 Minn. 552, 246 N. W. 115 (1932), three opinions written by Mr. Justice Dibell, are noteworthy for variety of citing and re-expressing the purported Brown doctrine. In Flour City, a writ of certiorari was issued to the conciliation court of Minneapolis to review a judgment, the defendant asserting the invalidity of the statutory provision requiring a party to pay $500 as a condi-

tion to removal to municipal court and a jury trial in that court. The court delivered this dictum (150 Minn. 459, 185 N. W. 937):

"Objection is made to the act because of the severe provisions for costs in the event of a removal to the municipal court and a failure to reduce the recovery. They are not involved here. Objection is made to the provision of the act that there shall be no appeal from the judgment of the municipal court, but that it shall be final. That objection is not here. No one is trying to appeal from the municipal court. We may note, however, that, while the right of appeal is statutory, there *may be* a constitutional right to a review in the supreme court which survives the failure to provide a statutory appeal and all assertions of finality. County of Brown v. Winona & St. P. Land Co. 38 Minn. 397, 37 N. W. 949." (Italics supplied.)

Boucher, like City of Minneapolis v. Wilkin, *supra,* involved an appeal from a condemnation award. Here, however, the issue was whether the property owner could appeal to the *district* court, having failed to comply with the statutory requirement that an appeal from the city council's order of confirmation be taken within 20 days after such order. This court, having granted certiorari, reversed the district court order refusing to dismiss the untimely appeal. Mr. Justice Dibell wrote (171 Minn. 300, 214 N. W. 31):

"Under the constitution a man's property may not be taken in a condemnation proceeding without compensation or the land of another assessed for benefits without a judicial hearing. State ex rel. Hunt v. City of Montevideo, 142 Minn. 157, 171 N. W. 314. There is always a right of review in this court. County of Brown v. Winona & St. P. L. Co. 38 Minn. 397, 37 N. W. 949. The statute may provide a review by appeal, and if it does so and the conditions to the right of appeal are not observed, the court does not acquire jurisdiction."

Ridgway involved a situation where the case commenced in Minneapolis conciliation court had been removed to municipal

court and from there reviewed by certiorari in this court, in the face of a statute declaring that the municipal court judgment was final and that there should be no appeal. The court said (187 Minn. 553, 246 N. W. 115):

"* * * [The statute] always has provided that there shall be no appeal from the municipal court in an action brought there on removal from the conciliation court and that the judgment shall be final. In *Flour City F. & T. Co. v. Young,* 150 Minn. 452, 185 N. W. 934, we referred to this provision with the suggestion that under the doctrine of *County of Brown v. Winona & St. Peter Land Co.* 38 Minn. 397, 37 N. W. 949, there is a constitutional right to review in the supreme court notwithstanding the failure of the statute to provide for an appeal or deny one, the evident reference being to certiorari as offering the method of review. And in Halsey v. Svitak, 163 Minn. 253, 203 N. W. 968, certiorari was adopted as an appropriate method of review. *We mention these two cases and the result of the latter one so that it* may be understood that certiorari gives a constitutional method of review though the statute says there shall be no appeal."[10] (Italics supplied.)

The Minnesota Constitution does not by express word or by necessary implication impose on this court the duty to hear an appeal in all cases. It is clear that this court has not, in any of these cases, held otherwise. Its expressions relating to the right

[10] Several cases involving ordinance violations under the Red Wing municipal charter, in which the charter denied the right of appeal— even by certiorari—seem out of the mainstream of the cases construed in the text, for they would seem to suggest that appellate review is neither a right of the individual nor a judicial power. See, City of Red Wing v. Nibbe, 160 Minn. 274, 199 N. W. 918 (1924); State ex rel. Strupp v. Anderson, 165 Minn. 150, 206 N. W. 51 (1925), but the court did not pass on the certiorari question; State ex rel. Weich v. City of Red Wing, 175 Minn. 222, 220 N. W. 611 (1928), but the court did not pass on the question for the reason that a writ of certiorari was in fact issued. These cases, moreover, antedated this court's decision in Ridgway v. Vaughan, 187 Minn. 552, 246 N. W. 115 (1932), discussed in the text.

of appeal have been made in a context expressing this court's constitutional appellate power. These cases, to be sure, contain expressions of legislative power to regulate appeals—regulations acceptable on comity principles as designed to aid the court in the exercise of its appellate functions, regulations generally embraced in this court's present rules of procedure. They plainly do not hold, in any event, that the legislature may by regulation deny to this court its constitutionally independent appellate authority to review whatever this court deems mandated in the interests of justice.[11] Our review may be undertaken by certiorari, as in the cases cited,[12] or it may be by discretionary use of the

---

[11] It may well be that the legislature, in creating a substantive right by statute, may, as an element of that substantive right, circumscribe the adjudication of that right more strictly than in other cases, subject to constitutional requirements of due process. We do not burden this opinion with any view of such special situation.

[12] The scope of review by certiorari is something of a legal thicket, and as observed by Professor Reisenfeld and his co-authors in *Judicial Control of Administrative Action by Means of the Extraordinary Remedies in Minnesota*, 33 Minn. L. Rev. 685, 704, "has formed the subject of a great number of not always consistent statements" by this court. These commentators point out that this court has expressed the view that the writ is discretionary. Authority cited for this statement is State ex rel. Ross v. Posz, 106 Minn. 197, 118 N. W. 1014 (1908), where, in reversing a district court order quashing a writ which had been granted to review the action of a county board in establishing a drainage ditch, this court said (106 Minn. 199, 201, 118 N. W. 1015): "The office of the writ of certiorari is to review proceedings and judgments of inferior courts and tribunals clothed with authority to act judicially * * * where no appeal or other adequate remedy is afforded; and the remedy is appropriate in all such cases, where the substantial legal rights of the applicant have been so far invaded as to prejudicially affect him if the proceeding or judgment remains unreversed. * * *

* * * * * *

"* * * Whether a writ should be granted rests in the first instance in the discretion of the court, and if it be conceded that the [district] court may thereafter again exercise its discretion in quashing the writ after its issuance * * * the present case presented sufficient facts to

ordinary appeals procedures, as in McCormack v. Hankscraft Co. Inc. 278 Minn. 322, 154 N. W. 2d 488 (1967).[13] There is, in sum, no precedent for holding that this court must grant an appeal of right to every aggrieved litigant and that it is constitutionally without discretion in the exercise of its constitutionally-created appellate authority to decline an appeal. We hold that the County Court Act, under which an appeal may be taken to this court from the district court only by leave of this court, granted only in the exercise of this court's discretion, does not offend any provisions of the Minnesota Constitution.

■   We have deferred to this point a consideration of any question that the discriminate exercise of appellate discretion in deciding which cases from the district court will be reviewed offends against the due process or equal protection of the laws mandated by both the Minnesota and United States Constitutions. It is postulated, of course, that these decisions will be permissibly discriminate with respect to the substance and impor-

call for a determination of the merits of the controversy, and it was improperly quashed."

The authors of the law review article add that as a practical matter this court has granted the writ as a matter of course.

[13] The question in Hankscraft was in the narrow context of reviewing an order granting both parts of a blended motion for judgment notwithstanding the verdict or a new trial, the grant of a new trial being a conditional order not based on errors of law occurring at trial and thus not made appealable by statute. In determining nonetheless to review the propriety of the entire order, we said (278 Minn. 343, 154 N. W. 2d 502): "We believe the situation presented compels us to exercise our discretionary authority provided by the Constitution, if not, indeed, intended by § 605.05, subd. 2, of the new Civil Appeal Code. * * * We hold therefore that where, as here, a conditional order granting a new trial is based in whole or in part upon the insufficiency of the evidence and such issue is also raised and determined on review of the order granting judgment n.o.v., we will, if we deem the interests of justice require, review the order in its entirety. Perhaps future cases may require broadening this exercise of discretionary review, but this holding is sufficient for this case."

tance of the legal issues and not invidiously discriminatory with respect to the station of the parties or like impermissible considerations. Counsel for petitioner Theresa O'Rourke, although urging the County Court Act impermissibly authorized discretion in the acceptance or denial of appeals to this court, stated:

"* * * It is assumed that the discretion given to the Supreme Court would be exercised on grounds not discriminatory as between classes of persons, but upon standards relating to the importance of the case. All persons would be treated alike. To argue otherwise, one would have to contend for the elimination of discretionary powers at all levels of the judicial process."

The majority opinion of Mr. Justice Black and the concurring opinion of Mr. Justice Frankfurter in Griffin v. Illinois, 351 U. S. 12, 76 S. Ct. 585, 100 L. ed. 891 (1956), involving appeals of criminal convictions, constitutionally more sensitive than civil appeals, are most instructive on this issue. Mr. Justice Black wrote (351 U. S. 18, 76 S. Ct. 590, 100 L. ed. 898):

"* * * It is true that a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all. * * * But that is not to say that a State that does grant appellate review can do so in a way that discriminates against some convicted defendants on account of their poverty."

Mr. Justice Frankfurter, expanding on this point, said (351 U. S. 20, 76 S. Ct. 591, 100 L. ed. 900):

"The admonition of de Tocqueville not to confuse the familiar with the necessary has vivid application to appeals in criminal cases. The right to an appeal from a conviction for crime is today so established that this leads to the easy assumption that it is fundamental to the protection of life and liberty and therefore a necessary ingredient of due process of law. 'Due process' is, perhaps, the least frozen concept of our law—the least confined to history and the most absorptive of powerful social standards of a progressive society. But neither the unfolding content of 'due

process' nor the particularized safeguards of the Bill of Rights disregard procedural ways that reflect a national historic policy. It is significant that no appeals from convictions in the federal courts were afforded (with roundabout exceptions negligible for present purposes) for nearly a hundred years; and, despite the civilized standards of criminal justice in modern England, there was no appeal from convictions (again with exceptions not now pertinent) until 1907. Thus, it is now settled that due process of law does not require a State to afford review of criminal judgments.

"Nor does the equal protection of the laws deny a State the right to make classifications in law when such classifications are rooted in reason. 'The equality at which the "equal protection" clause aims is not a disembodied equality. The Fourteenth Amendment enjoins "the equal protection of the laws," and laws are not abstract propositions.' *Tigner v. Texas*, 310 U. S. 141, 147. Since capital offenses are *sui generis*, a State may take account of the irrevocability of death by allowing appeals in capital cases and not in others. Again, 'the right of appeal may be accorded by the State to the accused upon such terms as in its wisdom may be deemed proper.' *McKane v. Durston*, 153 U. S. 684, 687-688. The States have exercised this discriminating power. The different States and the same State from time to time have conditioned criminal appeals by fixing the time within which an appeal may be taken, by delimiting the scope of review, by shaping the mechanism by which alleged errors may be brought before the appellate tribunal, and so forth."

Similarly, it was, held in Lindsey v. Normet, 405 U. S. 56, 77, 92 S. Ct. 862, 876, 31 L. ed. 2d 36, 52 (1972), a case involving a wrongful detainer statute, that the Due Process Clause of the Fourteenth Amendment does not require a state to provide appellate review, but that when an appeal is afforded, "it cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause."

It is contended that the County Court Act on its face is discriminatory and a denial of equal protection because three counties—Hennepin, Ramsey, and St. Louis—are not governed by that statute and appeals in civil cases from the municipal courts of those counties may be heard directly in this court,[14] whereas appeals from the county courts of the other 84 counties with similar jurisdiction may be heard only by appeal to the district court and thereafter to this court only with leave.

Litigants undoubtedly are treated differently, based upon classification of the county in which a cause originates. That difference, however, is not of constitutional significance. First, the nature of the appellate review is not different, for the character of the appellate review is the same whether the district court or this court acts as the appellate tribunal. The most significant difference is that decision of an appeal by this court has binding precedential effect, while a decision of the district court left standing without leave to appeal to this court will have no such effect. To the litigant himself, however, that difference ordinarily would be of little consequence—or, if it were otherwise, it would be a substantial factor in this court's determination of whether to grant leave for the ultimate appeal here.

The constitutional claim, secondly, has consistently been rejected by this and the United States Supreme Court in analogous circumstances. Long ago we said in Tierney v. Dodge, 9 Minn. 153, 158 (166, 172):

"As an *appeal* is a statutory provision, it may be granted or withheld in all or any class of cases, and the class may be determined by the character of the proceeding, or, as in this case, by the amount of the fine or judgment. The limitation of the right of appeal in this case is general and operates equally upon all the suitors in that court. This is all that is required."

We more directly addressed this issue recently in State v. Beckman, 296 Minn. 443, 209 N. W. 2d 402 (1973). The state under-

---

[14] See, Minn. St. 488A.01, subd. 11; 488A.18, subd. 12; 488A.61, subd. 1.

took to appeal to this court from an Olmsted County Court pretrial order suppressing evidence of a breathalyzer test and a pre-arrest incriminating statement in a prosecution for driving a motor vehicle while under the influence of intoxicating liquor. Holding that by the terms of the County Court Act an appeal from that court must be taken to district court, not to this court, we said (296 Minn. 444, 446, 209 N. W. 2d 403, 404):

"* * * [The County Court Act] contemplate[s] a two-level appellate court review with the district court functioning as an intermediate reviewing court of the record of the county court and a final review of the district court's determination by the supreme court 'with leave' of this court. * * *

* * * * *

"We are mindful that statutes governing appeals from the comparable municipal or county courts of Hennepin, Ramsey, and St. Louis Counties permit direct appeals to the supreme court. However, we have recently held in City of St. Paul v. Hitzmann, 295 Minn. 301, 204 N. W. 2d 417 (1973), that variant criminal procedures in areas of population concentration do not violate the constitutional guarantee of equal protection since the 'Equal Protection Clause relates to equality between persons as such rather than between areas.' Salsburg v. Maryland, 346 U. S. 545, 551, 74 S. Ct. 280, 283, 98 L. ed. 281, 288 (1954)."

■ The discretionary power of this court with respect to acceptance of appeals has been considered in broad scope, but with immediate relevance to the constitutional validity of the County Court Act. Bench and bar should be reassured that the discretion to deny an appeal to this court will be exercised as the considered judgment of the court itself; and, as always, we shall look to the profession for counsel as to those procedures and practice that will most effectively serve the administration of justice.

We by this decision dispose only of those applications for leave to appeal stated in the caption, all other pending applications

to be disposed of by subsequent orders as in the case of motions made to the court.

Petitions in Nos. 44565 and 44575 are denied. Both petitioners, Kathleen Sharpe O'Rourke and Theresa M. O'Rourke, made claims to having been the legal wife of decedent Leo Francis O'Rourke. The County Court found that Kathleen and decedent had been validly married in Iowa in 1970; that, without obtaining a divorce from Kathleen, decedent had participated in a marriage ceremony with Theresa in 1971; and that Kathleen, not Theresa, was the legal wife of decedent. Theresa appealed to the district court. The county court further found, however, that Kathleen, prior to her marriage to decedent had made a valid antenuptial agreement, in which she renounced her rights in decedent's property. Kathleen also appealed to the district court. That court, sitting in an appellate capacity pursuant to the County Court Act, affirmed the county court. As the court's memorandum reflects, he appropriately considered whether the evidence supported the county court's findings of fact and he fully considered the legal precedents of this court supporting the county court's conclusions of law. No substantial purpose would be served by a second appeal to this court.

Petition in No. 44622 is denied. A county court jury in a negligence action found plaintiff-petitioner 80 percent causally negligent. He moved for judgment notwithstanding the verdict or for a new trial, which was denied. He then appealed to the district court, claiming that the verdict was not supported by the evidence and that he should be granted a new trial because of newly discovered evidence. The district court affirmed, correctly observing by memorandum that the evidence supported the jury's verdict and that the proffered new evidence was not of a type that could not have been obtained before trial. The issues having been fully treated by the district court, no substantial purpose would be served by a second appeal to this court.

So ordered.

UPON PETITIONS FOR REARGUMENT

On July 12, 1974, the following opinion was filed:

PER CURIAM.

Petitioner Theresa M. O'Rourke fully accepts the decision that Minn. St. 487.39 is constitutional and by petition for reargument urges only that leave to appeal should be granted to resolve an important issue of law deemed to be of first impression in this state. Leave to appeal is for that reason now granted in Nos. 44565 and 44575.

However, the petition for rehearing filed by the plaintiff in No. 44622 is denied since the petitioner raises only questions of fact which have been fully developed and reviewed in the lower courts.

MR. CHIEF JUSTICE KNUTSON, following oral argument, retired as chief justice and therefore withdrew from consideration or decision of these cases.