Olson *v.* Nelson.

---

ERASMUS OLSON, Plaintiff in Error, *vs.* ARMAND NELSON, Defendant in Error.

A mortgage must be governed by the laws in force at the date of its execution and delivery, as to its validity or invalidity.

By the Homestead Exemption Law of 1851, on page 363, R. S., Secs. 93-94, as amended by laws of 1854, page 103, the intention of the Legislature was to exempt from "sale on execution or other process of a Court," this homestead, as against any general indebtedness that the owner might incur, not connected with the land itself, or the improvements thereon, and they have made such exceptions only, as will prevent the owner from increasing the value of his land at the expense of those who furnish him with the labor or materials to do it, as will protect the public in the collection of taxes and assessments, and as will include liens voluntarily created by mortgage.

As to the class of claims excepted from its operation, it cannot be said that there ever was any exemption; therefore, there can be no "waiver or release" of the exemption in such cases, as it never existed, and a mortgage lawfully obtained, is among the excepted classes of claims.

The words, "release or waiver of such exemption," in said law, can only refer to an "execution or other process of a Court," and prevent the husband from acting alone, when the homestead is so attacked, as it is only exempted from such process.   And a mortgage lawfully obtained, or taxes and assessments would be collectable without any exception in their favor.

The word "release," as used in the statutes, does not include a mortgage.   The statute being in derrogation of the common law, must be strictly construed, and cannot be extended by implication.

*Emmett, Ch. J., dissenting—Holds*—That a mortgage is referred to in the statute as being one mode of releasing the homestead from the exemption attached to it, and that the words "lawfully obtained," have direct reference to the manner in which that release must be executed, in order to be valid and binding on the wife.

This was a Writ of Error to the District Court of Ramsey County.

Armand Nelson, the Plaintiff below, commenced the action

to foreclose a mortgage executed by the Defendant Olson, dated June 23, 1856, upon certain lands in Ramsey County.

The Defendant in his answer, admits the execution and delivery of the mortgage, and avers that at the date thereof he was a householder and a married man, and that he and his wife " then were, and still are living upon and occupying the premises ; described in the complaint, as a homestead." That the same consists of a single lot of land in Saint Paul, of the value of $800, and that his wife did not join with him in the execution of said mortgage, but has always refused so to do. And that they had never released or waived the exemption allowed by law, and claims the same as a homestead.

The Plaintiff demurred to this answer, upon grounds which appear in the points of the Defendant in Error. The District Court sustained the demurrer, and a decree of foreclosure was made and entered.

The following are the points and authorities relied upon by counsel for Plaintiff in Error :

*First.*—The answer to the complaint in the action, shows that the real estate described in the complaint, as the mortgaged property therein sought to be foreclosed and sold, is a homestead, and is by statute exempt from sale on execution or other process of the Court.

*Second.*—The mortgage referred to in the complaint, being upon a homestead, executed by the husband without the consent of the wife, and upon property of a less value than one thousand dollars, is absolutely void and conveys no rights whatever to the mortgagee. *Statutes, p.* 363, *secs.* 93–94; *Laws* 1858, *p.* 90, *sec.* 2 ; *Statutes, p.* 365, *sec.* 10. For

1. In the absence of any statutory permission, neither the husband or wife, or both together, can by waiver, release or contract to take effect in future, conclude themselves from asserting their right to the exemption of their homestead. Any such waiver, release or contract being void as against public policy. *Authorities before cited, and Crawford vs. Lockwood,* 9 *How. Pr. R. p.* 547 ; 10 *How. Pr. R. Harper vs. Leal, p.* 276.

2. By statute no release or waiver of the homestead exemp-

tion is valid unless the same shall be in writing, subscribed by the householder and his wife, and acknowledged in the same manner as conveyances of real estate are by law required to be acknowledged.

3. It is not claimed in the complaint, and the answer expressly denies that any such release or waiver, as the statute requires, has been executed by the Plaintiff in Error and his wife, to the Defendant in Error, or any other person, of the property sought to be charged and foreclosed and sold in this action.

4. The release and waiver mentioned in the statute, must be accompanied by an immediate delivery and change of possession of the property, the exemption to which is released and waived. *Burrill's Law Dictionary*, 857, 879 ; 2 *Hiliard Real Property*, 302.

5. The words release and waiver as used in the statute, are to be taken in their popular acceptation, and mean any act by which the householder and his wife can alienate their homestead, and includes mortgages when unaccompanied with the immediate change of possession of the premises. 2 *Black Com.* 324, 325 ; 1 *Tillinghast & Adams*, 192 ; 2 *Cranch*, 236 ; 13 *Mass.* 324 ; 7 *Mass.* 523 ; 14 *Mass.* 88, 92 ; 1 *Pick.* 248, 258 ; 12 *Mass.* 383.

*Third.*—The statute being a beneficial one, must be liberally construed, and must receive such a construction as shall give effect to the intention of the Legislature. 25 *Wend.* 370 ; *Smith Com. on Con. and Con.* 467 ; 1 *Black Com.* 97.

*Fourth.*—The evident intention of the statute is to prevent the household or family from coming to penury, to provide that they shall be protected in the enjoyment of a home, be secured in the means of subsistence, and guarded from the effects of the imbecility or extravagance of the husband and father ; to allow the husband without the consent of the wife by an instrument to take effect in the future so to charge his homestead, that it shall be sold from under him, and his family expelled therefrom and driven out upon the street, would be entirely to defeat the intention of the statute, and to stultify the legislators by whose wisdom the Statute was devised and enacted. 3*d*

*Mass.* 17, 21, 296; 8 *Mass.* 408, 423; 1 *Pick.* 235 ; 20·*ib.* 407; 13 *Mass.* 344.

The following are the points and authorities relied upon for the Defendant in Error :

*First.*—The Court below did not err in sustaining the demurrer to the answer. The statute on the subject of the exemption claimed by the answer, provides that such exemption " shall not extend to a mortgage" " lawfully obtained." *R. S. p.* 363, *sec.* 93–94.

1. There is no ambiguity in the language of the statute. It is incapable of two interpretations. There is no necessity for the Court to call to its aid any of the rules for determining the construction of statutes doubtful in meaning. The Court will give full effect to the intention of the Legislature, clearly expressed.

The statute creates an *exemption,* and provides the manner in which only that exemption may be *released or waived.* But it declares such exemption *shall not extend to a mortgage lawfully obtained.* It is said a mortgage is included in the term " release," and must be executed in the manner in which a release of the exemption is required to be executed. But, it is enough to say, there can be no *release* of the exemption in the case of such a mortgage, for the exemption *never extended to the mortgage.* It never existed as to the mortgage. It needs not therefore, to be *released or waived.* It is difficult to argue so plain a proposition. The meaning of the statute is so clear that one finds his best argument in repeating its very words.

2. If it could be claimed that the meaning of the statute is doubtful, all the rules governing the construction of statutes, applicable to the case, require such a construction as sustains the demurrer. For,

1. The *context* shows that the Legislature *intended* to create a limited exemption from sales on execution or other process of Court, only ; not a general exemption. They were treating of executions. It was natural to define the exemption existing in the case of sales on execution, and equally natural to provide that such exemption should not extend to other cases specified.

2. The construction contended for by the Plaintiff in Error, leads to an absurdity, and must therefore be rejected. It makes the statute declare that the exemption shall not extend to a mortgage lawfully obtained, and yet that such a mortgage to be free from the operation of the exemption must be executed precisely as if the exemption did extend to it. Nothing would reconcile this construction but words incapable of any other.

3. The statute being one exempting a debtor's property from payment of his debts, is in derogation of the common law, and must be strictly construed. *Rew vs. Alter*, 5 *Den.*, 119 ; *The People vs. Plumstead*, 2 *Mich.* (*Gibbs*,) 465.

This principle, and the former case, are recognized and approved by this Court in the recent case of *Grimes vs. Bryne·* *Opinion of the Court* (*Flandrau, J.*,) *on file.*

4. The different portions of the statute must be so construed as if possible to render them all reasonably operative. 5 *Ind.* (*Porter*,) 105 ; 2 *Mich.* (*Gibbs*,) 138 ; 9 *Pick.* 496 ; *Opinion of the Justice*, 22–57.

For this and the above, and rules generally for construction of statutes, see " Rules of Justice Story," to be found in *Story on Contracts, p.* 592, *note f.*

5. Statutes *in pari materia* are to be construed together.

The Legislature in the general exemption law of 1858, enacted in express words, the provision contended for here by Plaintiff in Error. It must have deemed it *necessary* to do so. It has been claimed that the words " lawfully obtained," relate to the *mode of execution* of the mortgage as that prescribed for a *release* of the exemption. It is noticeable that the law of 1858 retains these terms, while expressly providing the mode of execution of a mortgage to render it free from the operation of the exemption. *Laws of* 1858, *p.* 9, *sec.* 2. *See too in this view, R. S. p.* 365, *sec.* 10.

6. The term " mortgage " must be deemed to have been used by the Legislature in the ordinary popular sense, and not to have been included in that of a " release," or " waiver."

*Second.*—If the exemption claimed is based upon the statute of 1858, the mortgage in question, is not effected by such law,

8

which, if intended to effect it, is so far unconstitutional. *See Grimes vs. Bryne, supra, and cases there cited and reviewed.*

*Third.*—All the points made, and authorities cited by the Plaintiff in Error, have reference to cases where the exemption claimed has existence ; and his argument *assumes* that the exemption extends to a mortgage lawfully obtained.

*Fourth*—The judgment below should ·be affirmed.

SANFORD & BEVERIDGE, Counsel for Plaintiff in Error.

SPENCER & GREEN, Counsel for Defendant in Error.

*By the Court*—FLANDRAU, J. The ʽmortgage in the complaint set out, was executed on the 23d day of June, 1856, and consequently must be governed by the laws then in force, as to its validity or invalidity. It was executed by the Plaintiff in Error alone, and was upon his homestead, he being at the time a married man.

It is claimed by the Plaintiff in Error, that the signature of the wife was essential to the validity of the instrument, and we are cited to *Sections 93–94 of the R. S. on page* 363. Section 93 declares what character of homestead " shall be exempt from sale on execution or other process of a Court," and covers the case of the Plaintiff in Error, herein, and provides that " no release or waiver of such exemption shall be valid unless the same shall be in writing, subscribed by such householder and his wife, if he have one, and acknowledged in the same manner as conveyances of real estate are by law required to be acknowledged."

Section 94, as amended by the laws of 1854, page 103, declares that " such exemption shall not effect any laborers', mechanics' or other lien for labor performed, or materials furnished in the erection, alteration or repairs of any building, or addition thereto, on such land, *nor extend to any mortgage thereof lawfully obtained,* nor to any sale for non-payment of taxes or assessments thereon, nor to any debts contracted, or liabilities incurred for the purchase of said land."

It is quite evident that the intention of the Legislature was

to exempt from " sale on execution, or other process of a Court," this homestead, as against any general indebtedness that the owner might incur, not connected with the land itself, or the improvements thereon; and they have made such exceptions only as will prevent the owner from increasing the value of his land at the expense of those who furnish him with the labor or materials to do it, as will protect the public in the collection of taxes and assessments, and as will include liens voluntarily created by mortgage.

The exemption and the exceptions to its operation must be read together; they are one act; and as to the class of claims excepted, it cannot be said that there ever was any exemption at all; the land stands in relation to them, as any other land of the owner would; exactly as if the law had never been passed at all.  Such being the case, there can be no such thing as a " waiver or release " of the exemption in such cases, as it never existed; and that provision of Section 93, which says, that " no release or waiver of such exemption shall be valid unless the same shall be in writing, subscribed by such householder and his wife, if he have one," &c., cannot refer to any of the excepted class of claims, among which is a mortgage lawfully obtained.

These words " release or waiver of such exemption," can ouly refer to an " execution or other process of a Court," and prevent the husband from acting alone when the homestead is so attacked, as it is only exempted from such process, and we think the exemption being limited as it is to such process, a mortgage lawfully obtained, and taxes and assessments would have been collectable against it without any exception in their favor.

If there was any doubt about the meaning of the Legislature being as we have interpreted it, it would be cleared away by the act of 1858, on the same subject, the first Section of which provides for a homestead exemption against any process from a Court, and the second Section limiting the extent of such exemption, uses the very words of the Revised Statutes in reference to a mortgage, adding, what the Plaintiff in Error claims for that act, to wit: " Such exemption shall not extend to any mortgage thereon, lawfully obtained, but such mortgage or other alienation of such land by the owner thereof, if a married man,

shall not be valid without the signature of the wife of the same, unless such mortgage shall be given to secure the payment of the purchase money or some portion thereof," making it quite evident that the Legislature of 1858 deemed the legislation of 1851 imperfect in this particular.

The Plaintiff in Error claims that the word " release," as used in the statute includes a mortgage. The view we have taken of the application of that word, is an answer to this point, but there is a still further one, which is, that the statute being one exempting a debtor's property from the payment of his debts, is in derogation of the common law, and must be strictly construed. *Rew vs. Alter*, 5 *Denio*, 119. We recognized this principle in the case of *Grimes vs. Bryne*, argued at the December term of this Court, in 1858. We cannot extend by implication, statutes of this nature.

The judgment should be affirmed.

Mr. Chief Justice Emmett dissenting, filed the following opinion :

I am unable to agree with my learned associates in the construction they give to the homestead exemption law of 1851. It has seemed to me, that the exemption of a homestead, is intended more for the benefit of the debtor's family, than of the debtor himself; to guard the wife and children against the rapacity of creditors, and the improvidence as well as the misfortune of the husband and father. Such a construction, therefore, should be given the statute as would afford the protection contemplated by the passage of the act. But to so construe it as to permit the husband, by a simple mortgage, in which the wife does not join, and of which perhaps she is utterly ignorant, to bind the homestead, to the entire exclusion of the family, is to deprive the wife and family of all protection from the law, and enables a weak or unworthy husband to sacrifice the hallowed home with all its clustering associations, to satisfy the demands of unfortunate creditors. Such a construction to my mind defeats the very object of the law, opens wide the door to fraud, and invites the schemes of the unprincipled and crafty."

I regard the homestead law as recognizing these family rights, and placing them beyond the control of the husband as well as his creditors. Sec. 93, provides that no *release or waiver* of the exemption of the homestead shall be valid unless the same be in writing, signed by the householder *and his wife*, if he have one, and acknowledged, in the same manner that conveyances of real estate are acknowledged ; evidently intending by this provision to put it out of the power of the husband to deprive the family of the homestead, without the full consent of the wife. Can we then reasonably come to the conclusion that in the very next Section, and indeed in the very next sentence, the Legislature intended to undo what they had just done, and give the husband absolute control over what they had just guarded with such zealous care ? The succeeding Section, it is true, provides that " such exemption shall not extend to any mortgage thereof lawfully obtained," but this must be construed with reference to the provisions of the Section preceding, and the general object of the exemption. I hold that a mortgage is here referred to, only as being one mode of releasing the homestead from the exemption attached to it, and believe that the words " lawfully obtained," have direct reference to the manner in which that release must be executed, according to the preceding Section, in order to be valid and binding on the wife. If, however, the husband could without consent of the wife, mortgage the homestead at pleasure, and the exemption does not extend to such a mortgage, then the homestead law which we have affected to regard with so much favor, as protecting the family against the husband as well as the creditor, becomes a mere farce.

If this statute must have a literal construction, and the exemption cannot extend to mortgages, it would, in my opinion, be but reasonable to confine its application to such mortgages only, as had been obtained, prior to the passage of the law. This it is conceived would be more in accordance with the spirit of the age, and the design of the Legislature, as generally understood and acted upon from the time this law was passed, to the commencement of the present action.

The act of 1858, is referred to, as establishing the construc-

tion asked by the Plaintiff, but to my mind, that act is declaratory only, and the provision referred to, inserted only to put the question here at issue beyond controversy.