**In re Grant Carl CARLSON and Ruth Ann Carlson, fdba Grant Carlson Salvage, Debtors.**

**Bankruptcy No. BKY 4–84–147.**

United States Bankruptcy Court, D. Minnesota.

June 1, 1984.

Robert Milavetz, Joan McCormack and Steve Elias, Milavetz & Associates, P.A., Crystal, Minn., for petitioner.

Joel T. Miller, Duluth, Minn., for Norwest Bank of Duluth.

Daniel J. Buivid, Jr., St. Paul, Minn., for the firm & Employers Mut. Cas. Ins. Co.

Lommen, Nelson, Sullivan & Cole, P.A., Minneapolis, Minn., Jon J. Hoganson, Minneapolis, Minn., for Dunlap, Keith, Finseth, Berndt & Sandberg.

Winthrop, Weinstine & Sexton, St. Paul, Minn., William L. French, Muir, Heuel & Carlson, P.A., Rochester, Minn., for Road Constructors, Inc. & William Quick.

Bruce Elliot, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, Minn., for H.S. Dresser Co.

Paul J. Scheerer, Dorsey & Whitney, Minneapolis, Minn., for Mayo Clinic & St. Mary's Hosp.

Thomas F. Miller, Minneapolis, Minn., Trustee.

## ORDER ALLOWING EXEMPTION

ROBERT J. KRESSEL, Bankruptcy Judge.

This matter came on for hearing on various objections to the debtors' claim of cer-

tain exempt property. Robert Milavetz and Joan McCormack appeared on behalf of the debtors, Paul J. Scheerer appeared on behalf of the Mayo Clinic and St. Mary's Hospital, Inc. Joel T. Mitchell appeared on behalf of Norwest Bank Duluth and Thomas F. Miller, the trustee, appeared *in propria persona*. Based on the files and records, the argument and agreement of counsel, I make the following:

## FINDINGS OF FACT [1]

1. In October of 1981, the debtor, Grant Carlson, was injured in a construction accident.

2. A lawsuit was filed on his behalf and on behalf of his wife, debtor, Ruth Ann Carlson, against Road Constructors, Inc. and H.S. Dresser & Sons, Inc. (Dresser) in Winona County District Court.

3. A settlement of that litigation was reached and the terms of that settlement read into the record on January 19, 1984. As part of the settlement, the defendants agreed to pay the plaintiffs $47,500.00. In exchange, the Carlsons agreed to release both defendants from all claims which normally arise from such personal injury actions including past and future medical expenses, past and future pain and suffering and permanent disability. Ruth Ann Carlson was also a plaintiff and agreed to release her claims for her loss of companionship and other damage suffered as a result of her husband's injury. The settlement did not deal with the division of the payment between the two defendants nor how the debtors would share the settlement.

4. On January 20, 1984, CNA, Dresser's insurer, issued its draft in the amount of $7,500.00 payable to the debtors and their attorneys.

5. On January 27, 1984, Employers Mutual, Road Constructors' insurer, issued its draft in the sum of $40,000 payable to the debtors and their attorneys.

6. Also on January 27, 1984, the debtors filed their Chapter 7 bankruptcy petition.

7. With their petition, the debtors attached a Schedule B–2 listing as one of their assets, the litigation against Road Constructors and Dresser stating "Settlement pending—Approx. net value $27,000.00". On their Schedule B–4 they claimed as exempt "right of action for injuries to the person of the debtors MSA 550.37(22) 27,000.00".

8. On January 31, Road Constructors which had a prior judgment against the debtors served a garnishment summons on the Commissioner of Insurance purporting to garnish the $40,000.00 insurance draft.

9. Also on January 31, 1984, Dresser's attorney mailed the $7,500 draft to the debtors' attorney.

10. On February 1, 1984, the attorneys for Road Constructors received the $40,000.00 draft from Employers Mutual.

11. On February 6, 1984 the debtors filed an amended Schedule B–4 amending that schedule to claim as exempt their right of action for injuries to the persons of the debtor in the new amount of $47,500.00.

12. Also on February 6, 1984, the attorneys for Road Constructors received their first actual notice of the filing of the bankruptcy in a phone conversation with one of the attorneys for the debtors.

13. On February 9, 1984, the debtors signed a release of Dresser and endorsed the $7,500.00 insurance draft as did the debtors' attorneys. $4,500.00 of that amount was paid to the debtors and $3,000.00 was retained by the debtors' attorneys.

14. On February 10, 1984 the attorneys for Road Constructors notified the debtors' attorney that he intended to send Road Constructors draft directly to the trustee.

15. On March 8, 1984, the trustee received the $40,000.00 draft.

16. Also on March 8, 1984, Road Constructors filed an objection to the debtors'

---

**1.** Most of the Findings of Fact were stipulated to by the parties for the purpose of this decision.

The rest appear from the court files.

claim of their personal injury action as exempt.

17. On March 10, 1984, the trustee endorsed the $40,000.00 draft. No release was signed other than whatever language appears on the reverse side of the draft.

18. On March 14, 1984, the trustee filed an objection to the debtors' claim of their personal injury action as exempt.

19. On March 19, 1984, Norwest Bank Duluth filed an objection to the debtors' claim of their personal injury action as exempt.

20. On March 29, 1984, the Mayo Clinic and St. Mary's Hospital, Inc. filed an objection to the debtors' claim of their personal injury action as exempt.

21. On April 25, 1984, a hearing was held on the various objections to the exemption claim.

## CONCLUSIONS OF LAW

The debtors have exercised the right given them by 11 U.S.C. § 522(b)(2) to claim as exempt in their bankruptcy those exemptions granted to them by the laws of the state of Minnesota. This exemption dispute centers around Minn.Stat. § 550.37, subd. 22 which provides an exemption from attachment, garnishment or sale on any final process for "rights of action for injuries to the person of the debtor or of a relative whether or not resulting in death." Specifically two questions arise. At the time their bankruptcy petition was filed, did the debtors possess a "right of action for injuries," or was their interest something else. Secondly, it is necessary to decide the scope of the exemption provided by that Minnesota statute. Subd. 22 was added by 1980 Minn.Laws, c. 599. The exemption provision was added to that law in a conference committee. As a result, there is no committee report or even committee hearings to help determine the meaning of that subdivision. There are also no reported decisions by any Minnesota court construing the exemption. Thus I am left in the very uncomfortable position of attempting to interpret a state statute without any guidance from the legislature or the courts of this state. Since it is a task that cannot be avoided, I will do the best that I can.

### I.

I will first face the question that I posed second. Specifically, I must determine whether or not the exemption covers Grant Carlson's claim including permanent disability, pain and suffering, past or future medical expenses, loss of past or future income or other economic loss. Likewise, I must determine whether or not Ruth Ann Carlson is entitled to exempt her claims from the estate which for lack of a better term can be summed up in the common phrase, "loss of consortium". The objectors all urge a narrow construction of the statute to include apparently only claims for permanent disability. I disagree. While I always hesitate to ascribe any intention to a legislative body, I conclude that the Minnesota legislature intended an extremely broad exemption in subd. 22. I think so for at least three reasons.

### A

First, I look back to § 70(a)(5) of the Old Bankruptcy Act (formerly 11 U.S.C. § 110(a)(5)). Section 70 was roughly analogous to § 541 of the new Bankruptcy Code (11 U.S.C. § 541). Section 541 now speaks of property of the estate; old § 70 spoke in terms of the vesting of title of certain of the bankrupt's property in the trustee. As a general proposition, rights of action did vest in the trustee, however, with the exception

> that rights of action ex delicto for libel, slander, *injuries to the person of the bankrupt or of a relative, whether or not resulting in death,* seduction, and criminal conversation shall not vest in the trustee unless by the law of the State such rights of action are subject to attachment, execution, garnishment, sequestration, or other judicial process. (emphasis added)

With the exception of the substitution of the word debtor for bankrupt, subd. 22 is

identical to § 70a(5). Although included in the title to property section of the Bankruptcy Act, the quoted language from § 70a(5) is in effect a federal exemption in bankruptcy without explicitly calling it such. The Minnesota Supreme Court has held that an unliquidated personal injury claim is not subject to garnishment. *Northwestern National Bank of Bloomington—Richfield v. Hilton & Associates,* 271 Minn. 564, 136 N.W.2d 646 (1965). Therefore, under § 70(a)(5) the entire personal injury action (i.e. right of action for injuries to the person) did not pass to the trustee, was in effect exempt. The language in § 70 had been broadly interpreted under the act to include basically the entire cause of action resulting from a personal injury.

The onset of the new Bankruptcy Code resulted in such causes of action becoming property of the estate under § 541 and those debtors claiming the state exemptions would not now be able to keep those causes of action from the trustee. Thus I think it is a fair conclusion that the legislature intended the exemption in § 522 to be a replacement in the state exemptions for the *de facto* exemption which had been lost with the repeal of § 70a(5).

### B

Secondly, I think if we look to the timing of the adoption of the new exemption and the circumstances surrounding it, we can get some hint of what the legislature had in mind. The Bankruptcy Reform Act was effective October 1, 1979. For the first time, debtors in bankruptcy cases had their choice between the exemptions found in 11 U.S.C. § 522(d), the so-called federal exemptions or the exemptions to which debtors were traditionally entitled under bankruptcy proceedings, the so-called state exemptions.[2] 1980 was the first legislative session following the effective date of the Bankruptcy Code. Thus I think that it is a fair conclusion that the exemption statutes adopted during the 1980 session were at least partially in response to the exemption provisions of the new Bankruptcy Code.

I think that conclusion is buttressed by looking at the exemption statute amendments themselves. In addition to Chapter 599 discussed already, the 1980 legislature also adopted in 1980, Minn.Laws Chapter 550 which included for the first time an exemption for a motor vehicle. Subd. 12a now reads as follows: "one motor vehicle to the extent of a value not exceeding $2,000." Compare that with 11 U.S.C. § 522(d)(2), "the debtors' interest, not to exceed $1,200 in value in one motor vehicle." Chapter 550 also adopted subd. 21 to § 550.37. Subd. 21 reads "for the purpose of this section "value" means current fair market value." Compare subd. 21 with 11 U.S.C. § 522(a)(2) which reads "in this section—"value" means fair market value as of the date of the filing of the petition."

Going back to Chapter 599 of 1980 laws, in addition to adopting new subd. 22, also adopted were new subd. 23 and 24. Subd. 23 deals with the exemption of accrued dividends, interest or loan value of life insurance contracts. Subd. 23 is virtually identical to 11 U.S.C. § 522(d)(8). Subd. 24 deals with exemption of payments under stock, bonus, pension, profit sharing or annuity plans and is identical in language to 11 U.S.C. § 522(d)(10)(E) without the limitations found in the latter. Thus subd. 24 is purposely broader than the bankruptcy exemption.

If we look at another of the then new bankruptcy exemptions, we find § 522(d)(11) which exempts

The debtor's right to receive, or property that is traceable to—

(B) a payment on account of the wrongful death of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of

---

**2.** Those references are misnomers, however, since § 522(b)(2) includes exemptions under federal law other than those found in § 522(d) as well as exemptions provided by state or local law. The alternative exemptions might more properly be referred to as "bankruptcy exemptions" and "nonbankruptcy exemptions".

the debtor and any dependent of the debtor;

(D) a payment, not to exceed $7,500, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent; or

(E) a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

Looking at Chapters 550 and 599 together it is clear that the five amendments adopted were in direct response to the bankruptcy exemptions and were intended to bring the state exemptions in conformity with the bankruptcy exemptions or make them even broader in scope. I think that reading the language that it is clear the subd. 22 was meant to be an equivalent state law exemption for those parts of § 522(d)(11) quoted above. The legislature clearly could have adopted similar language limitations or dollar limitations but chose not to. Therefore, I think that subd. 22 is clearly intended to be broader than the § 522(d)(11) exemptions. Notable by its absence is the dollar limitation found in § 522(d)(11)(B) and the requirement that the exemption will apply only "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor" found in § 522(d)(11)(B) and § 522(d)(11)(E). I assume such absence is intentional. Also absent is the limitation in § 522(d)(11) that the exemption will not extend to "pain and suffering or compensation for actual pecuniary loss." Again, I assume that the absence of those limitations is intentional and that subd. 22 is, therefore, intended to include a right of action for pain and suffering or compensation for actual pecuniary loss as well as loss of future earnings or any other claim arising out of personal injury to the debtor or the debtors' relative.

## C

The third reason that I think supports the broad interpretation of subd. 22 is a matter of simple common understanding. I think that common parlance would indicate that a action for injury to the person would include all those things that are commonly included in a so-called "personal injury action." Thus I think that any damages suffered and sought to be compensated as part of a personal injury action by the debtor or the debtors' relative is included in the language, rights of action for injuries to the person. See, for example, Minn.Stat. § 541.05, subd. 1(5) dealing with the statute of limitations for "injury to the person or rights of another."

■ Therefore, I conclude that the debtors' claims arising out of their state court litigation could all be claimed as exempt pursuant to Minn.Stat. § 550.37, subd. 22 (1982).

## II

■ I must now face the question of whether the debtors had "rights of action for injuries to the person" at the time they filed their bankruptcy petition. I conclude that they did. Their original lawsuit was still pending even though a compromise had been reached and they had agreed to dismiss their claims in exchange for an agreed sum. That settlement constituted an executory accord; i.e., the Carlsons agreed to sign releases if and when payment was made. I do not think that the agreement was what might otherwise be called a substitute contract whereby something is accepted as a substitution or in extinguishment of an antecedent claim. See, Don Kral, Inc. v. Lindstrom, 286 Minn. 37; 173 N.W.2d 921 (1970). Since no payment had been made nor releases signed at the time the petition was filed, the Carlsons' interest remained a "right of action". Don Kral, supra Hoxsie v. Empire Lumber Co., 41 Minn. 548, 43 N.W. 476 (1889). Therefore, I conclude that the debtors did maintain their rights of action for injuries to the person at the time their petition was filed.

Based on the foregoing,

IT IS ORDERED:

The objections to the debtors' claim of their right of action against H.S. Dresser and Road Constructors, Inc. as exempt are overruled and the debtors' exemption is allowed.