**In re Mark E. MEDILL and Robin L. Medill, Debtors.**

**Bankruptcy No. BKY 3–88–2955.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Oct. 9, 1990.

---

Willard L. Wentzell, Jr., Sieben, Grose, VonHoltum, McCoy, Carey, Ltd., Minneapolis, Minn., for debtors.

Mark C. Halverson, Mankato, Minn., Chapter 7 Trustee.

## ORDER SUSTAINING TRUSTEE'S OBJECTION TO DEBTORS' CLAIM OF EXEMPTION, AND DECLARING STATE STATUTE UNCONSTITUTIONAL

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 7 case came on before the Court on July 27, 1989, for hearing on the Trustee's objection to Debtors' claim of exemption. Chapter 7 Trustee Mark C. Halverson appeared for the bankruptcy estate. Debtors appeared by Willard L. Wentzell, Jr. Upon the moving and responsive documents and the record made at hearing, the Court makes the following order.

## FINDINGS OF FACT AND PROCEDURAL HISTORY

Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code on September 21, 1988. On their B Schedules, they did not list any right in legal causes of action as an exempt or non-exempt asset; they did note the pendency of personal injury litigation by Robin Medill as party-plaintiff in the Minnesota state courts on Item 12 of their Statement of Financial Affairs. The Court granted a Chapter 7 discharge to Debtors on December 20, 1988.

In an amended Schedule B–4 filed on January 27, 1989, Debtors changed their theory of exemption from the exemptions available under 11 U.S.C. § 522(d), to those available under Minnesota state law. They also added an entry for "right of action for injuries to person of the debtor or of a relative whether or not resulting in death ie debtors v. Jack and Lee Schafer." This reference signified a lawsuit then pending in the Minnesota State District Court for the Fifth Judicial District, Cottonwood County. This lawsuit had arisen out of a 1984 automobile accident in which Debtor Robin Medill had been involved, and in which she had been injured. Debtors claimed "100 percent" of the value of this asset as exempt, pursuant to MINN.STAT. § 550.37 subd. 22.

The Court subsequently approved the Trustee's employment of Debtors' pre-petition state-court counsel to represent the bankruptcy estate's interest, if any, in the litigation and trial of this lawsuit. On February 21, 1989, the Trustee timely filed an objection to Debtors' claim of exemption in the personal-injury right of action, noting the pendency of the trial in the state court.

In fact, the trial in Cottonwood County District Court had convened in late January and early February 1989. After full trial, and via a special verdict form, the jury determined Robin Medill's general damages as the sum of $67,500.00, plus $6,000.00 in

future special damages for medical care, and Mark Medill's derivative damages as the sum of $3,000.00.[1] It assessed the parties' comparative fault at 40 percent for Robin Medill, and at 60 percent for the defendants. The jury's findings resulted in the entry of a net judgment in favor of Robin Medill in the sum of $44,280.00 plus interest and costs, and in favor of Mark Medill in the sum of $1,860.00.

## DISCUSSION

### 1. Issues Presented.

For the purposes of their bankruptcy case, Debtors have claimed their interest in the personal-injury right of action in litigation in Cottonwood County District Court as exempt, pursuant to the following language of MINN.STAT. § 550.37:

> Subdivision 1. The property mentioned in this section is not liable to attachment, garnishment, or sale on any final process, issued from any court.
>
> .       .       .       .       .
>
> Subd. 22. Rights of action for injuries to the person of the debtor or of a relative whether or not resulting in death.[2]

The asset in question here was, as of the date of Debtors' bankruptcy filing, a disputed, unliquidated claim for damages against third parties, which had arisen from personal injury suffered by Robin Medill. As such, it fell squarely within the ambit of the statute on whose authority Debtors claim it as exempt. *In re Carlson,* 40 B.R. 746, 750 (Bankr.D.Minn.1984).[3]

The Trustee makes two alternative arguments in his objection to this claim of exemption.

First, he maintains that subd. 22, having no objective criteria limiting the value of the asset which may be exempted under its authority, violates MINN. CONST. art. 1,

§ 12;[4] that as a consequence the statute is void and of no effect; and that the full value of the pre-petition right of action is property of Debtors' bankruptcy estate. He argues that the decision of Judge Dennis D. O'Brien of this Court in *In re Bailey,* 84 B.R. 608 (Bankr.D.Minn.1988) was substantively wrong, and should not be given deference in this case.

In the alternative, he argues that, if this Court adopts the *Bailey* rationale, the estate is still entitled to some portion of the recovery in the state-court litigation, to the extent that it is the fruit of a right to damages which is not traceable to Robin Medill's bodily injury.

In their response, Debtors first request that this Court certify the constitutional issue to the Minnesota Supreme Court pursuant to MINN.STAT. § 480.061. As their second argument, going to the substantive aspects of the Trustee's objection, they argue that the Trustee has not demonstrated beyond a reasonable doubt that subd. 22 is unconstitutional under art. 1, § 12. In the alternative, they argue that invalidating subd. 22 would then deprive Debtors of other rights guaranteed them under the Minnesota state constitution.

### 2. Necessity of Certification to Attorney General of Minnesota.

Before the hearing on this matter, the Trustee formally notified the Attorney General of the State of Minnesota of the pendency of his constitutional challenge to the statute, and invited his intervention. Via the July 19, 1989 letter of Peter M. Ackerberg, Special Assistant Attorney General, the State of Minnesota announced its decision not to intervene at this time, with a reservation of the right to intervene in the event of an appeal. As a result,

---

1. Via a stipulation, the defendants' insurer agreed to entry of additional judgment in favor of Mark Medill in the sum of $100.00; this sum corresponded to the deductible on his collision coverage.

2. For brevity, this statute henceforth will be cited as "subd. 22."

3. A right to receive payments on account of a settled or fully-litigated personal-injury cause of action reduced to judgment would likely *not* fall within the ambit of the Minnesota state statute. *See In re Carlson,* 40 B.R. at 750. *Cf.* 11 U.S.C. § 522(d)(11)(D) and (E).

4. Again, for brevity this provision will be signified as "art. 1, § 12."

formal certification to the state Attorney General pursuant to 28 U.S.C. § 2403(b) would be duplicative, and is unnecessary.

### 3. Appropriateness of Certification to Supreme Court of Minnesota.

Under the pertinent provision of MINN. STAT. § 480.061 subd. 1,

> The [Minnesota] supreme court may answer questions of law certified to it by ... a United States bankruptcy court ... when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of this state.

■ This statute, the Uniform Certification of Questions Law Act, empowers the Minnesota Supreme Court to decide unsettled issues of Minnesota state law at the request of a certifying federal or collateral state court. If a party requests a court to certify a question under this statute, that court must first conclude that the issue in question is central to the disposition of the proceeding before it. Then, it must conclude that "there is no controlling precedent" in the decisions of the Minnesota Supreme Court. While it is recognized that certification "does ... in the long run save time, energy and resources and helps build a cooperative judicial federalism," *Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974), its use should be confined largely to instances where the state supreme court has never addressed the dispositive issue, *e.g. Minn. Recipients Alliance v. Noot*, 527 F.Supp. 140 (D.Minn.1981), or where that court has previously indicated a willingness to change a substantive rule of law but has not actually done so by a definitive ruling in a live controversy, *see Guillard v. Niag-*

*ara Mach. & Tool Works*, 488 F.2d 20 (8th Cir.1973).

■ The constitutional issues at bar are certainly determinative of the Trustee's objection to Debtors' claim of exemption. To be sure, the Minnesota Supreme Court has never ruled on the constitutionality of subd. 22. However, in a long line of cases applying art. 1, § 12 to various exemption statutes enacted by the Minnesota state legislature, that line commencing almost with the advent of statehood and extending through *In re Haggerty*, 448 N.W.2d 363 (Minn.1989), the Minnesota Supreme Court has announced and refined an analysis which provides ample guidance to this Court. The published history of the framing of the Minnesota state constitution also sheds light on the questions posed. The lines of authority for the present inquiry are settled, and certification is not warranted.

### 4. Constitutionality of MINN.STAT. § 550.37, subd. 22 Under MINN. CONST. art. 1, § 12.

Since statehood, the Minnesota Constitution has provided:

> A reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law.

MINN. CONST. art. 1, § 12.

This provision both empowers the state legislature to enact exemption statutes,[5] and expressly mandates the enactment of exemption laws in some form. *See, e.g., McPherson v. University Motors, Inc.*, 292 Minn. 147, 149, 193 N.W.2d 616, 618 (1972) ("This provision makes it the duty of the legislature to provide by law a reasonable exemption"); *Barton v. Drake*, 21 Minn. 299, 302 (1875); *Kelly v. Baker*, 10 Minn. 154, 155 (Gil. 124, 125) (1865).

In the same breath, art. 1, § 12 limits the grant of power to the legislature:

---

5. Under the common law, all of a debtor's property was liable to execution for payment of his debts. *Ward v. Huhn*, 16 Minn. 159, 161 (1870); 35 C.J.S. *Exemptions* § 1 at 7–8 (1960); 31 Am. Jur.2d *Exemptions* § 2 at 650 (1989). Thus,

exemption statutes are in derogation of the common law. *Grimes v. Bryne*, 2 Minn. 89, 106 (Gil. 72, 89) (1858); *Olson v. Nelson*, 3 Minn. 53, 57 (Gil. 22, 26) (1859); *Beaupre v. Scott*, 3 Minn. 419, 421 (Gil. 306, 308) (1859).

The constitutional provision in question prohibits the legislature from exempting an unreasonable amount of property.

*In re How,* 59 Minn. 415, 419, 61 N.W. 456, 457 (1894). The Minnesota Supreme Court has enforced this implied requirement of a reasonable limit by invalidating exemption statutes which imposed no limit on the amount of property which was facially subject to their protection. *See In re How,* 59 Minn. 415, 61 N.W. 456, *modified, In re How,* 61 Minn. 217, 63 N.W. 627 (1895); *In re Tveten,* 402 N.W.2d 551, 557–58 (Minn. 1987) (emphasizing continuing vitality of basic principle enunciated in first *How* decision, to rule MINN.STAT. §§ 550.37 subd. 11 and 64B.18 unconstitutional). The Judges of this Court have done so as well. *See In re Netz,* 91 B.R. 503 (Bankr.D.Minn. 1988) (ruling 1988 version of MINN.STAT. § 550.37 subd. 24 unconstitutional); *In re Bailey,* 84 B.R. 608 (Bankr.D.Minn.1988) (ruling subd. 22 unconstitutional in part, as applied); *In re Hilary,* 76 B.R. 683 (Bankr. D.Minn.1987) (ruling MINN.STAT. § 550.37 subd. 2 unconstitutional).

The present case involves the same exemption statute at issue in *In re Bailey. Bailey* is the only extant application of art. 1, § 12 to subd. 22; it includes a cogent, thoughtful discussion of policy and principle, both specific to debtor-creditor law and general. Thus, it is no wonder that Judge O'Brien's analysis plays a central role in both sides' arguments. The Trustee criticizes the rationale of *Bailey,* arguing that it neglects the constitutional mandate of art. 1, § 12. Debtors embrace *Bailey,* and urge that this Court adopt its holding.

Art. 1, § 12 requires that the amount of an exemption be "determined by law." Necessarily framed by the *Bailey* analysis, then, the issue becomes one of the construction of art. 1, § 12: Did the framers of the Minnesota constitution intend that this "determination" be evidenced by spe-cific language in the body of a statute, or did they contemplate the judicial engrafting of limitations from other sources or bodies of law?

In *Bailey,* Judge O'Brien implicitly concluded the latter. Noting, preliminarily and without discussion, that subd. 22 was "not inherently unconstitutional," he then invoked the precept that a statute "may be found constitutional as applied to some persons or separable subject matters, and unconstitutional as applied to others." 84 B.R. at 610 (citing *Grobe v. Oak Center Cry. Co.,* 262 Minn. 60, 113 N.W.2d 458 (1962) and *City of St. Paul v. Dalsin,* 245 Minn. 325, 71 N.W.2d 855 (1955)). Distinguishing between the elements of general and special damages in a right of action for personal injury, he noted (citing *In re Carlson, supra* p. 687) that all of the elements of damages recoverable on account of a bodily injury were the subject matter of subd. 2. He then impliedly concluded that these two elements were separable. Then holding that the "supervisory power of the [trial] Court," exercised in the context of post-trial motions decided in accordance with the state law of damages, provided enough of a reasonable limitation on an aggregate recovery for general damages, he concluded that subd. 22, as applied to the debtor's right to general damages, passed constitutional muster under art. 1, § 12. 84 B.R. at 610–11.[6]

The difficulty with the *Bailey* analysis is the flaw in its threshold conclusion: that subd. 22 is "not inherently unconstitutional." This stems from a misperception of the function of art. 1, § 12. That provision is a part of the Bill of Rights of the Minnesota Constitution. Under the tradition pioneered in the United States in 1787–89, bills of rights are bodies of fundamental law, which, among other things, prescribe limitations on the power of the legislature to

---

**6.** To the opposite effect, Judge O'Brien concluded that "[t]he concept of reasonableness has no application to ... an award [of special damages]," which he noted had the function of reimbursing the injured person for economic losses such as costs of medical care, past lost wages, non-medical expenditures, and property loss. 84 B.R. at 611–12. Concluding that state law outside the four corners of subd. 22 did not provide any limiting criterion for an award of special damages, he concluded that subd. 22 violated the implied mandate of art. 1, § 12 as to claims for special damages, and that it was unenforceable against the bankruptcy estate to that extent. *Id.*

enact or enforce laws affecting the liberty or property rights of its citizens. In an interesting twist on this basic characteristic, art. 1, § 12 functions first to create a governmental power, and only then to limit it. It empowers the Minnesota Legislature to enact exemption laws in derogation of the common law, and then mandates the exercise of that power. *See* DEBATES AND PROCEEDINGS OF THE CONSTITUTIONAL CONVENTION FOR THE TERRITORY OF MINNESOTA, T.F. Andrews, Reporter (St. Paul: Geo. W. Moore, printer, 1858) (commonly known as, and hereafter signified as, "the Republican Report" [7]) at 106–7 (remarks of delegate Balcombe: "I think all we are called upon now to do, is to provide that the Legislature shall have power to frame an exemption law"); at 150 (remarks of delegate Balcombe, to same effect, and remarks of delegate Mantor: "There is ... in the Bill of Rights sufficient to guarantee to every man a sufficient exemption. It is so worded that the Legislature can act upon the subject with a due regard to the rights and wishes of the people"); and at 107 (remarks of delegate Lyle, arguing in favor of fixing specific amounts of exemptions in the constitution itself, rather than leaving the issue "to the caprice of the Legislature," as the ultimately-adopted draft did). *See also* DEBATES AND PROCEEDINGS OF THE MINNESOTA CONSTITUTIONAL CONVENTION, Francis H. Smith, Reporter (St. Paul: Earle S. Goodrich, printer, 1857) (commonly known as "the Democrat-

ic Report" [8]) at 346 (remarks of delegate Flandrau: "If we require that a reasonable amount of property shall be exempt from seizure for debt, we should make provision for the Legislature to carry out the purpose"). Only after it creates legislative power does art. 1, § 12 circumscribe the mandated exercise of that power, by requiring the enactment of exemption laws with "reasonable" limitations.

The framers, however, clearly contemplated that *only* the Legislature would have the power to "determine ... by law" the nature and amount of property exemptions. The placement of the limitation requirement as a condition on the constitutional grant of legislative authority clearly evidences this. So, too, do the framers' remarks. *See* the Republican Report at 149 (remarks of delegate Morgan, moving to strike proposed amendment which would have fixed exemption amounts in the constitution itself, "for the reason that this is wholly a matter of legislation") and at 150 (remarks of delegate North, to effect that constitution should contain only general principles on exemption rights, without going into "the details of legislation," and remarks of delegate Mantor, opposing proposed amendments setting exemption amounts in the constitution: "It looks to me ridiculous to embody in our Constitution anything infringing on the legislative department ...").[9] While the Minnesota Supreme Court has never directly spoken to the question, the substance of its various

---

7. It is one of the little-known anomalies of Minnesota's history that it had two simultaneous state constitutional conventions, and actually has two separate documentary constitutions. The sectional and partisan strife which was leading inexorably to the Civil War ravaged even the northwestern frontier; the delegates elected by the people of the Minnesota Territory to convene a constitutional convention fell into two camps, one adhering to the Democratic Party and one to the newly-formed Republican Party, and animosity between the two was so great that these factions refused to participate in a common convention. Each convened their own. The result was totally separate proceedings, two different reports thereof, and two different scrivenings of the state constitution; the differences were resolved by a conference committee, though no single document embodied the results of that compromise. *See, in general,*

J. Haycraft, "Territorial Existence and Constitutional Statehood of Minnesota," at 1 MINN. STAT.ANN. 145–158 (1976).

8. see n. 7 *supra.*

9. The unique and irregular origin of the constitutional debates may deprive them of some weight for the purposes of judicial construction. *Taylor v. Taylor,* 10 Minn. 81 (1865). See also Mickelsen, *The Use and Interpretation of Article 1, Section Eight of the Minnesota Constitution 1861–1984,* 10 Wm. Mitchell L.Rev. 667, 674–5 n. 42 (1984). Regardless, collateral interpretative authority of some lesser weight is worth more than no such authority at all—and, in any event, the quoted remarks are wholly consistent with the constitutional text and the only reasonable inferences to be drawn from it.

rulings on art. 1, § 12 reflects an implicit understanding that this is the case. *See, e.g., In re Haggerty*, 448 N.W.2d at 365–66; *In re Tveten*, 402 N.W.2d at 556; *McPherson v. University Motors, Inc.*, 292 Minn. at 149, 193 N.W.2d at 618.

This being the case, it necessarily follows that the "determin[ation] by law" of the amount of an exemption is to be made in the legislative enactment itself, on the face of the statute. To the extent that any law external to the specific exemption statute is to be applied as the limiting criterion, the only principled and responsible construction of the constitutional grant of authority under art. 1, § 12 requires the Legislature to incorporate that law *by specific reference on the face of the statute*. *In re McKeag*, 111 B.R. 815, 817 (Bankr.D.Minn. 1990) (Dreher, J., agreeing with this Court's prior enunciation of this conclusion in *In re Patty*, 1990 WL 43222 (Bankr.D. Minn.1989)). Any other interpretation of art. 1, § 12 exceeds the intent of the framers. *In re Tveten*, 402 N.W.2d at 558 (interpretation of mandate of art. 1, § 12 which would sustain "mere [statutory] designation of types of [exempt] property" as complying with the mandate, would lead to "result ... beyond the intention of the framers ...").

■ Finally, as the Trustee argues, looking beyond the face of subd. 22 to find some sort of dividing qualification of the valid scope of its subject matter exceeds the authority of the courts in construing legislation; where the language of a statute is clear and unambiguous, the courts must treat and give appropriate effect to it as written, without reference to extraneous statements or principles. *Christopherson v. Fed. Land Bank of St. Paul*, 388 N.W.2d 373, 374 (Minn.1986). As the Supreme Court has held,

... it is the duty of a court in considering the validity of an act to give it such reasonable construction as can be reached to bring it within the fundamental law. But it is very clear that amendment may not be substituted for construction, and that a court may not exercise legislative functions to save the law from conflict with constitutional limitation.

*Yu Cong Eng v. Trinidad*, 271 U.S. 500, 518, 46 S.Ct. 619, 623, 70 L.Ed. 1059 (1926). Thus, a court may not judicially impose a restrictive interpretation on the scope of a statute's application to save it from unconstitutional invalidation; where the facial scope of a statute's governance is clear and unequivocal, the court must apply it as drafted—and, to the extent the statute violates constitutional protections, the court must invalidate it. *Id.* at 515–16 and 527–28, 46 S.Ct. at 622–23 and 626–27.

Once this is recognized, two things are clear.

■ First, the *Bailey* analysis is flawed in its conclusion that subd. 22 is "not inherently unconstitutional." As noted immediately *infra*, subd. 22 *is* unconstitutional on its face.[10] Thus, to the extent it engaged in a more broadly-ranging analysis beyond this threshold conclusion, *Bailey* went too far. This Court, thus, respectfully declines to adopt its rationale.

Second, for want of any qualifying facial criteria other than a simple delineation of the general type of property exempt, subd. 22 violates art. 1, § 12. *In re Tveten*, 402 N.W.2d at 556–58. As a result it is ineffective against a Trustee in bankruptcy, and does not operate to remove Debtors' judgment recovery from the estate. *In re Netz*, 91 B.R. at 505; *In re Hilary*, 76 B.R. at 683.

10. The Trustee had the burden of establishing the unconstitutionality of subd. 22 beyond a reasonable doubt. *Head v. Special School District No. 1*, 288 Minn. 496, 506, 182 N.W.2d 887, 893–94 (1970), *cert. den.*, 404 U.S. 886, 92 S.Ct. 196, 30 L.Ed.2d 168 (1971); *Contos v. Herbst*, 278 N.W.2d 732, 736 (Minn.1979), *app. dism'd sub nom. Prest v. Herbst*, 444 U.S. 804, 100 S.Ct. 24, 62 L.Ed.2d 17 (1979); *In re Tveten*, 402 N.W.2d at 556. Even acknowledging the presumption of constitutionality, *Guilliams v. Comm'r of Revenue*, 299 N.W.2d 138, 142 (Minn. 1980), and the precept that the judicial power of constitutional invalidation should be exercised only when absolutely necessary and with great caution, *Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 453 (Minn.1988), the Court concludes the Trustee has met this burden.

Contrary to Debtors' argument, this conclusion is not affected by the fact that the economic and legal attributes of a right of action for personal injury are substantially different from those of the other sorts of tangible or intangible assets subject to exemption under MINN.STAT. §§ 510.01–02 and 550.37. To be sure, it is probably impossible for a debtor to enhance the value of a personal-injury right of action via the process of "bankruptcy estate planning" [11]; this sort of property right is not subject to that sort of perceived abuse to the detriment of creditors, by debtors contemplating insolvency or bankruptcy. This, however, is beside the point. There is no historical evidence for the proposition that the framers of the Minnesota Constitution intended the limitation requirement of art. 1, § 12 to serve as a control on the conversion of non-exempt to exempt assets, and no judicial recognition of it. To the contrary, the only extant pronouncements suggest that the framers intended the clause merely to serve as a focus for the legislative balancing of property rights as between debtors and creditors. *See* the Republican Report at 150 (remarks of delegate Balcombe: the Legislature was to have "authority to pass such laws [relating to exemptions] as in their judgment they think proper and which they think the people demand").

### 5. Constitutionality of Sustaining of Trustee's Objection Under MINN. CONST. art. 1, § 8.

■ In the alternative, Debtors invoke art. 1, § 8 of the Minnesota Constitution:

Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property or character;. he ought to obtain justice freely and without purchase; completely and without denial; promptly and without delay, conformable to the laws.

This provision is known as the "remedies clause" of the Minnesota Constitution. It has its roots in the ancient common law of England, all the way back to Magna Carta. *Appeal of O'Rourke*, 300 Minn. 158, 165, 220 N.W.2d 811, 815–16 (1974).

Debtors' counsel argues that invalidating subd. 22

in this case .. would erode the effectiveness, if not deprive debtors of their rights under ... art. 1, § 8.... Without such an exemption, debtors will not have adequate remedy for injuries wrongfully inflicted upon them because the exercise of the remedy and any awarded damages will be subject to the trustee's control.

The point of this argument is somewhat obscure. Unlike virtually all of the Minnesota Supreme Court cases which have applied the remedies clause to an actual effect, this case does not involve the remedies clause in a challenge to a legislative enactment, or to a substantive rule of common law. This is not a constitutional challenge to a statutory enactment which abrogates a prior common law remedy.[12] Nor is it a challenge to a common-law immunity from suit.[13] *See, in general,* Mickelsen,

**11.** As this Court defined it, bankruptcy estate planning is

the conscious, directed effort on the part of a financially-besieged debtor to liquidate personal assets which are not exempt from claims of general creditors under state debtor-creditor law, and to use the proceeds of that liquidation to purchase, or to pay down existing encumbrances on, assets which are exempt under state law, as a preliminary to the debtor's claim of exemption in those assets in the subsequent bankruptcy case.

*In re Johnson*, 80 B.R. 953, 957 (Bankr.D.Minn. 1987), *remanded*, 880 F.2d 78 (8th Cir.1989).

**12.** As in *Davis v. Pierse*, 7 Minn. 1 (1862), *McFarland v. Butler*, 8 Minn. 91 (1862), *Jackson v. Butler*, 8 Minn. 92 (1862), and *Wilcox &*

*Barber v. Davis*, 7 Minn. 12 (1862) (all striking down Civil War-era statute which suspended rights of Confederate sympathizers to prosecute and defend actions at law); *Baker v. Kelley*, 11 Minn. 258 (1966) (striking down one-year statute of limitations for actions challenging validity of tax forfeiture sales); and *Carlson v. Smogard*, 298 Minn. 362, 215 N.W.2d 615 (1974) (concluding that certain provisions of Workers Compensation Act impermissibly abrogated common-law rights of indemnification).

**13.** As in *Nieting v. Blondell*, 306 Minn. 122, 235 N.W.2d 597 (1975) (abrogating state sovereign immunity for torts, using remedies clause) and *Anderson v. Stream*, 295 N.W.2d 595 (Minn. 1980) (abolishing last principles of parental immunity, using remedies clause).

*supra* n. 9. Rather, counsel broadly suggests that the remedies clause is itself the source of substantive and procedural rights, and that this Court's *act of invalidating* subd. 22 would somehow offend the fundamental principles on which art. 1, § 8 is based. He also essentially argues that the remedies clause operates to mandate the creation or at least the preservation, of an exemption from the claims of creditors for *any* right of action for damages.

Debtors' counsel does not cite any authority for the proposition that the remedies clause is conceptually applicable to the act of judicial review. The clause certainly is applicable to legislative action, and even to one sort of judicial action, the application of a common-law rule of immunity. However, there is no basis for its application to the fundamental process of constitutional adjudication; it cannot be defensibly applied to hamstring that process, which is central to the balance of powers in American government.

Beyond this, however, counsel's arguments have no vitality in the context of a voluntary bankruptcy case. Nor do they have a basis in the Minnesota constitution, in the caselaw construing it, or in a common-sense understanding of the nature and function of the remedies clause and exemption laws.

The remedies clause, by its very nature, has no applicability in a bankruptcy case. Art. 1, § 8 does not create or enhance property rights in a right of action. 3B DUNNELL'S MINN.DIG.2d *Constitutional Law* § 12.01 (3d ed.1979), and cases cited therein at n. 44. It does not even guarantee rights of action against legislative abolition.[14] All it does is to guarantee that the state of Minnesota may not deprive an injured party of a pre-existing legal or equitable remedy for the redress of an injury recognized to be actionable at law. *Id.*

The filing of a bankruptcy petition creates an estate, into which pass all of the "legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This includes all unliquidated rights of action in favor of the debtor. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 2313 n. 9, 76 L.Ed.2d 515 (1983); *In re Ozark Restaurant Equipment Co., Inc.,* 816 F.2d 1222 (8th Cir.1987); *Nat'l City Bank v. Coopers & Lybrand,* 409 N.W.2d 862 (Minn.App.1987), *rev. den.* (Minn. Oct. 21, 1987). The remedy for the right of action, of course, follows the right itself. An individual debtor may remove a pre-petition right of action from the estate by claiming, and being allowed, a statutory exemption for the right. 11 U.S.C. § 522(b). Where, however, the claim of exemption is disallowed, the right of action—*and its attendant remedy*—remain in the estate, subject to the trustee's administration for the benefit of creditors. The debtor in such an instance cannot complain of the deprivation of the remedy, when he or she retains no interest in the underlying right of action itself.

So it is here. Debtors voluntarily sought this Court's protection, and obtained debt relief. They relied, however in good faith, on an unconstitutional statute in claiming their personal-injury rights of action as exempt. This Court cannot enforce the statute, as it violates fundamental state law. Debtors' prior reliance, and even the unfortunate loss which they will suffer, are irrelevant; they could have no legally-enforceable protection or expectation under an unconstitutional statute. *Norton v. Shelby County,* 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178 (1886). Debtors are losing no protected interest in violation of the remedies clause by the present decision; the protected interest in the remedy at issue reposed in the bankruptcy estate as soon as Debtors filed for Chapter 7 relief, and it

14. For instance, the Legislature abolished the common-law civil causes of action for breach of promise to marry, alienation of affections, criminal conversation, and seduction in 1978, based on its finding that they had "been subject to grave abuses." MINN.STAT. §§ 553.01–.03. There is no reported challenge to this enactment under the remedies clause—probably because it seems to have been a response to the observation of the Minnesota Supreme Court that abolition of such causes of action was the province of the Legislature. *See Gorder v. Sims,* 306 Minn. 275, 281–83, 237 N.W.2d 67, 71–72 (1975).

has been exercised by the Trustee as was incumbent upon him.

The second argument is similarly without merit. The remedies clause says nothing about exemption protection for rights of action or their fruits; the clause focuses solely on the right to seek redress in the courts for deprivation of legal rights, and it is silent on all else. The remedies clause has nothing to do with exemption law, and the suggestion that it does or should is absurd; the framers spoke to the question of exemptions exclusively in art. 1, § 12, and that provision is the sole constitutional source and governance of debtors' property rights against the claims of creditors and creditors' representatives. The remedies clause certainly preserved Debtors' rights to their day in court outside of bankruptcy. It did not give them a vested and indefeasible right to the fruits of their remedies, particularly in the context of a bankruptcy case which they voluntarily commenced. It did not elevate their claim of exemption above a constitutional attack to its statutory basis, and it certainly did not purport to limit or deny any court's authority to fully litigate all competing claims to the ultimate fruits of the underlying rights of action.

Thus, to the extent that art. 1, § 8 is even germane to a judicial proceeding in bankruptcy, Debtors' argument based upon it does not furnish any support for their claim of exemption under subd. 22.

### 6. Conclusion.

The statute under which Debtors sought to remove their rights of action and judgment recovery from the claims of their creditors is unconstitutional, and cannot be enforced in this case. Thus, the funds which the state-court defendants' insurer has paid or will pay in satisfaction of Debt- ors' judgment are property of the bankruptcy estate.

The Court does not reach these conclusions easily, or willingly. The constitutional invalidation of legislative enactments in the exercise of judicial review is one of the most serious exercises of governmental power in a democratic state. This decision will have a heavy personal impact on Debtors; Robin Medill apparently suffered some permanent injury, and she now loses all of the financial compensation for that impairment.

Regardless, the result is foreordained, under the established terms of the Minnesota constitution. This Court's role is to interpret and apply that law, and it has carried out that role to the only result which it sees as possible. If the result is harsh, or seems unfair, that cannot be avoided. If the consequences of this decision bode ill for the general class of personal injury plaintiffs, as they invariably must, the solution is one for the Minnesota Legislature; only it can change the statutory law, to conform it to the state's fundamental law in the wake of *Tveten, Hilary, Netz,* and this decision.[15]

IT IS THEREFORE ADJUDGED AND ORDERED:

1. That MINN.STAT. § 550.37 subd. 22 violates MINN. CONST. art. 1, § 12, is therefore void, and was ineffective to remove Debtors' pre-petition rights of action for injuries to the person of Robin Medill from the bankruptcy estate in this case.

2. That the Trustee's objection to Debtors' claim of exemption in the assets described in Term 1 of this order therefore is sustained in its entirety.

3. That the monies recovered on account of Debtors' pre-petition rights of action are property of Debtors' bankruptcy estate, and the Trustee shall proceed to

---

**15.** It is unclear what, if any, impact this decision will have other than in bankruptcy cases. Under Minnesota common law, unliquidated rights of action are not subject to garnishment or levy. *Northwestern Nat'l Bank of Bloomington–Richfield v. Hilton & Assoc.,* 271 Minn. 564, 136 N.W.2d 646 (1965). As Judge Kressel aptly noted in *Carlson,* the Minnesota Legislature's 1980 enactment of subd. 22 was almost certain- ly in response to Congress's enactment of the Bankruptcy Code of 1978—which, in a marked change from pre-Code law, brought unliquidated rights of action into the bankruptcy estate for the first time. 40 B.R. at 749–50. The present decision obviously does not and cannot affect common-law immunity from garnishment in a non-bankruptcy context.

 

administer them for the benefit of Debtors' creditors.